UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF IOWA

| | |
|---|---|
| In Re:<br><br>**NATURAL PORK PRODUCTION II, LLP**<br><br>　　　Debtor and Debtor in Possession.<br><br>PO Box 468<br>Harlan, IA  51537<br><br>EIN:  03-0480873 | ) Case No.: 12-02872-als11<br>)<br>) Chapter 11<br>)<br>) Hon. Anita L. Shodeen<br>)<br>) **DEBTOR'S _AMENDED_ MOTION FOR**<br>) **ORDER APPROVING AUCTION AND**<br>) **BIDDING PROCEDURES;**<br>) **APPROVING COST AND EXPENSE**<br>) **REIMBURSEMENT; PRESCRIBING**<br>) **MANNER OF NOTICE; AND**<br>) **AUTHORIZING SALE OF ASSETS**<br>) **FREE AND CLEAR OF LIENS,**<br>) **CLAIMS AND ENCUMBRANCES,**<br>) **SUBJECT TO HIGHER OR BETTER**<br>) **OFFERS**<br>)<br>) Date:  April 16, 2013 |

　　　　Natural Pork Production II, LLP ("NPPII" or "Debtor"), Debtor and Debtor-in-Possession in this Chapter 11 case herein, by and through its duly-employed General Reorganization Counsel, Jeffrey D. Goetz, Esq., of the law firm of Bradshaw, Fowler, Proctor & Fairgrave, P.C., respectfully submits this _Amended_ Motion for Order (1) Approving Auction and Bidding Procedures; (2) Approving Cost and Expense Reimbursement; (3) Prescribing Manner of Notice; and (4) Authorizing Sale of Assets Free and Clear of Liens, Claims and Encumbrances, Subject to Higher or Better Offers.  In support of this _Amended_ Motion ("Motion"), the Debtor states as follows:

　　　　1.　　　Debtor commenced the captioned case by filing a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code ("Bankruptcy Code") on September 11, 2012 (the "Petition Date").

2. Debtor continues to operate its businesses and manage its property as debtor-in-possession pursuant to Bankruptcy Code §§ 1107(a) and 1108.

3. No trustee or examiner has been appointed in this case. An Official Unsecured Creditors Committee ("OUCC") has been appointed in the case.

4. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The statutory predicates for relief sought herein include Code §§ 105(a), 363, 365 and Rules 2002, 6004, 6006 and 9006 of the Federal Rules of Bankruptcy Procedures (the "Bankruptcy Rules").

5. Since the Petition Date, NPPII has received inquiries and a Letter of Intent offering to purchase all of the Debtor's assets in its pork finishing facility located at 5502 South Roby Road, Colfax, Indiana (hereinafter, the "Colfax Facility"). Further negotiations have resulted in the Debtor executing an Asset Purchase Agreement ("APA") with AMVC CRAWFORDSVILLE, LLC or its designees ("Purchaser"). Attached as Exhibit "A" and incorporated by reference herein is a true and exact copy of the APA.

6. Debtor is seeking Court approval of Auction and Bidding Procedures that would provide for the submission of competing bids, an auction and final sale hearing within sixty (60) days of the filing date of this Motion ("Filing Date"). The debtor's proposed Auction and Bidding Procedures is attached hereto as Exhibit "B" and is incorporated by reference herein. Debtor believes that a sale pursuant to the APA and Auction and Bidding Procedures is in the best interest of Debtor's estate and its creditors.

7. By this Motion, Debtor seeks authority to solicit bids and sell substantially all of its assets associated with the Colfax Facility (otherwise referred to as the "Assets").

8.  Debtor believes this Motion, the APA and the transactions contemplated thereby are in the best interests of the bankruptcy estate and in the best interests of all other interested parties in this Chapter 11 case. An orderly sale of the Assets is essential. The proceeds of the sale, to the extent sold as a going concern, will be greater than if the same Assets are sold in a piecemeal liquidation; farming production will not be interrupted; and on-going vendor relationships can be maintained. Finally, an orderly sale process will also aid in minimizing the administrative expenses of Debtor's estate.

### Marketing Efforts

9.  In order to do the most efficient job possible in marketing the Assets, attempting to create an auction environment, and testing the marketplace to ensure the Debtor and the Bankruptcy Estate are realizing the maximum value for the Colfax Facility, Variant Capital Advisors, LLC ("Variant") was retained by the Debtor to market the Colfax Facility.

10. Variant has prepared an executive summary of the Colfax property and its investment highlights to be distributed to potential buyers, both strategic and financial, that have executed Non-Disclosure Agreements. Further, Variant has populated a Virtual Data Room ("VDR") to facilitate interested parties due diligence exercises. Variant will also work with interested parties to supplement diligence investigations and facility tours, as necessary.

### Relief Requested

11. As stated above, Debtor intends to sell the Assets and believes that an orderly sale of the Assets is the best way to maximize the value of the Assets for the benefit of creditors and all parties in interest. Accordingly, Debtor requests that a hearing be held expeditiously for the Court to enter an order (the "Sale Procedures Order") (i) approving the Auction and Bidding Procedures; (ii) approving the Cost and Expense Reimbursement (as defined below); (iii) and

approving the form and manner of notice (the "Sale Notice") of the proposed Auction and Bidding Procedures.

12. Debtor requests that the Court approve the Auction and Bidding Procedures and Sale Notice within fourteen (14) days of the Filing Date (the "First Hearing").

13. After approval by the Court of the Auction and Bidding Procedures, and the Sale Notice, Debtor will send such notice to all potential purchasers of the Assets known to Debtor, and if Competing Bids are received, an Auction (as defined in the Auction and Bidding Procedures) shall be held.

14. Debtor further requests that the Court, at a second hearing to be held promptly after the Auction (and if no Auction is held, within seven (7) days after the Competing Bid Deadline), enter an order (the "Sale Order") approving the sale of the Assets to Purchaser (or to such other party or parties that make the highest or best bid(s) at the Auction), free and clear of any and all liens, claims and encumbrances, and approving the assumption and assignment of certain executory contracts and unexpired leases to Purchaser (or to such other party or parties that make the highest or best bid(s) at the Auction), in connection with such sale.

### Auction and Bidding Procedures

15. To ensure that Debtor has maximized the value of the Assets, Debtor has caused Purchaser to agree that the sale of the Assets must be subject to the proposed Auction and Bidding Procedures described in detail in Exhibit "B".

16. Bankruptcy Code Section 363 governs Debtor's ability to sell property of the estate outside of the ordinary course of business. Although this section does not set forth a standard for determining when it is appropriate to authorize such a sale, courts have uniformly held that such a sale should be approved when it is justified by a sound business purpose. *See In*

re *Lionel Corp.*, 722 F.2d 1063, 1070-71 (2d. Cir. 1983); *Chrysler Group LLC v. South Holland Dodge, Inc.*, 862 F. Supp. 2d 661, 668 (E.D. Michigan 2012); *In re Dewey & LeBoeuf LLP*, No. 12–12321 (MG), 2012 WL 5386276, at *5 (Bankr. S.D. N.Y. Nov. 1, 2012); *In re Nicole Energy Services, Inc.*, 385 B.R. 201, 230 (Bankr. S.D. Ohio 2008). The burden of establishing a rational business justification lies with the debtor. *Nicole Energy*, 385 B.R. at 230 (citing *Lionel*, 722 F.2d at 1070-71). However, once the debtor makes such a showing, a presumption will attach that the decision was made on an informed basis, in good faith and in the honest belief that the action was in the best interest of the company. *See, e.g., In re Brook Valley VII, Joint Venture*, 496 F.3d 892, 900 (8th Cir. 2007).

17.  Applying Bankruptcy Code Section 363, courts accord Debtors substantial deference in formulating procedures for selling assets. *See, e.g., In re Boston Generating, LLC*, 440 B.R. 302, 329-330 (S.D. N.Y. 2010) (noting that the requirements for section 363 sales are reviewed according to the deferential "business judgment" standard); *In re Adelphia Communications Corp.*, No. 02–41729 (REG), 2003 WL 22316543, at *30 (Bankr. S.D.N.Y. Mar. 4, 2003) (applying the "business judgment" standard presumption of validity and noting that courts are "loath to interfere with corporate decisions absent showings of bad faith, self interest, or gross negligence"). Indeed, courts recognize that procedures intended to enhance competitive bidding are consistent with the goal of maximizing the value received by the estate and are appropriate in the context of bankruptcy sales. *See, e.g., In re Dura Automotive Sys., Inc.*, No. 06–11202, 2007 WL 7728109, at *90 (Bankr. Del. Aug. 15, 2007) (finding that "procedures intended to enhance competitive bidding are consistent with the goal of maximizing the value received by the estate and therefore are appropriate in the context of bankruptcy sales").

Main Document      Page 6 of 16

18.     Here, the Auction and Bidding Procedures are supported by ample business justification and are reasonable and appropriate under the circumstances of this case. The proposed Auction and Bidding Procedures are designed to foster an open, competitive and fair sale process, while maximizing the value the estate hopes to obtain for the Assets. Debtor requests that the Court approve the Auction and Bidding Procedures as fair and reasonable under the circumstances and authorize and direct Debtor to proceed in accordance with them.

### The Cost and Expense Reimbursement is Reasonable and Appropriate

19.     The sole bid protection being provided to the Purchaser (otherwise sometimes referred to as the "Stalking Horse Bidder") is a fixed $50,000.00 fee to reimburse the Stalking Horse for its time, trouble and expenses incurred in this process ("Cost and Expense Reimbursement"). The $50,000.00 is 3.4 percent (3.4%) of the Stalking Horse Bid, and due to the complexity of the sale and the speed with which it has proceeded, the $50,000.00 Cost and Expense Reimbursement is reasonable under the circumstances.

20.     After considering the reasonableness of bidding incentives, courts have approved a range of break-up fees as a percentage of the purchase price in the range provided here as being appropriate under the facts and circumstances of the case. *See* In re Chi-Chi's Inc., Case No. 03-13063 (Bankr. D. Del. November 4, 2003) (fee of 5.1% permitted); In re Great Northern Paper, Inc., Case No. 03-10048 (Bankr. D. Me. February 18, 2003) (fee of 5.4% plus reimbursement of expenses upheld); In re FSC Corp., Case No. 00-b-04659 (Bankr. N.D. Ill. February 28, 2000) (break-up fee of 3.4% plus reimbursement of expenses is reasonable).

21.     The Cost and Expense Reimbursement should be approved because it is reasonable, will not chill bidding and is necessary to further the process of selecting additional bids. The Stalking Horse Bidder has made it clear that it will not proceed as a stalking horse without the protection of ensuring that it receives the Cost and Expense Reimbursement, if the

process it served to put into motion results in some other party purchasing the Debtor's Assets. The Debtor's ability to continue to shop the Colfax Facility for a higher or better offer, or even to market test the Stalking Horse Bidder's offer, would be eliminated if the Debtor could not secure the APA, inclusive of the Cost and Expense Reimbursement provision.

22. The APA will form the basis upon which other bids will be submitted and evaluated. The Initial Minimum Overbid of $100,000.00 exceeds the Cost and Expense Reimbursement, and, therefore, the Cost and Expense Reimbursement both establishes a threshold for overbids and will not result in a less beneficial net return from the sale.

23. Payment of the Cost and Expense Reimbursement will not harm creditors. Pursuant to the APA, the Debtor will incur the obligation to pay the Cost and Expense Reimbursement only if the Debtor accepts an alternative transaction for the sale of all or substantially all of the Assets of the Debtor to any party other than the Stalking Horse Bidder and that sale closes. The Cost and Expense Reimbursement will be paid from the proceeds of an alternative transaction in which the Prevailing Bidder is not the Stalking Horse, and the Initial Minimum Overbid of $100,000.00 will exceed the Cost and Expense Reimbursement. In light of the benefit to the Debtor's estate that is realized by having an agreed-upon APA, which thereby enables the Debtor to preserve the value of its estate and promote more competitive bidding, approval of the Cost and Expense Reimbursement is warranted.

### The Proposed Transaction Satisfies All Applicable Legal Standards

24. Bankruptcy Code Section 363(b)(1) provides, in relevant part, that a Debtor "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." *See also* Fed. R. Bankr. Proc. 6004(f)(1) ("All sales not in the ordinary course of business may be by private sale or by public auction"). This section generally permits

a Debtor to sell property of the estate outside of the ordinary course of its business where the proposed sale is a sound exercise of the Debtor's business judgment and when such sale is proposed in good faith. *See In re Lionel Corp.*, 722 F.2d 1063, 1070 (2d Cir. 1983); *In re Nicole Energy Services, Inc.*, 385 B.R. 201, 210 (S.D. Ohio 2008) ("Under the law of this [Sixth] Circuit, the Court may approve a sale of all of a debtor's assets under § 363(b) 'when a sound business purpose dictates such action.'") (quoting *Stephens Industries, Inc. v. McClung*, 789 F.2d 386, 390 (6th Cir. 1986)).

25. In the instant case, the proposed sale of the Assets pursuant to the APA constitutes a sound exercise of Debtor's business judgment and has been proposed in good faith. First, an expeditious sale of the Assets will aid in minimizing the administrative expenses of Debtor's estate, resulting in greater distribution to creditors. Second, such sale will increase the probability finishing operations will not be interrupted, service to customers maintained and vendor relationships preserved. Finally, the sale represents the best opportunity for the Debtor to realize the value of the Assets on a going-concern basis, considering external factors in the marketplace.

26. Debtor believes this Motion, the APA and the transactions contemplated thereby are in the best interests of the bankruptcy estate and in the best interests of all other interested parties in this Chapter 11 case.

27. Debtor submits that the factors described above, which support an expeditious sale of the Assets, are consistent with the traditional rationale for authorizing a sale outside of a Chapter 11 plan. *See also In re Boston Generating, LLC,* 440 B.R. 302, 321 (S.D. N.Y. 2010); *Lionel*, 722 F.2d at 1070.

**Sale Free and Clear of Liens**

28. Bankruptcy Code Section 363(f) authorizes a Debtor to use, sell or lease property of the estate outside of the ordinary course of business, free and clear of any interest in such property. The APA provides for the sale of the Assets free and clear of all interests, liens, claims and encumbrances, including existing or asserted rights of first refusal, contractual restrictions on transferability or other similar protective rights. Any such interests, liens, claims and encumbrances would attach to the proceeds of the sale of the Assets (the "Sale Proceeds") ultimately attributable to the property against or in which such interest, lien, claim or encumbrances is asserted.

29. Under Bankruptcy Code Section 363(f)(2), a sale free and clear of all interests, liens, claims and encumbrances is permissible if all parties asserting liens on or other interests in the assets consent. Debtor is providing proper notice of this Motion to the United States Trustee, Senior and other Secured Creditors, the OUCC, the ICC, counter-parties to executory contracts and unexpired leases and all other parties who have filed requests for special notice, thereby giving them the opportunity to object to this transaction. Provided that no secured creditors object to this Motion, Section 363(f)(2) will be satisfied. *See, e.g.*, *In re Motors Liquidation Co.*, 430 B.R. 65, 72) (in a Chapter 11 case, noting that "secured lenders" approved a transaction under § 363(b) of the Bankruptcy Code and related transactions).

30. Under Bankruptcy Code Section 363(f)(4), a sale free and clear of all interests, liens, claims and encumbrances is permissible if the interest of any entity is in *bona fide* dispute. Under Bankruptcy Code Section 363(f)(5), a sale free and clear of all interests, liens, claims and encumbrances is permissible if any party asserting an interest in the assets could be compelled to accept money satisfaction of such interest in a legal or equitable proceeding. The Debtor submits that to the extent the Inter Creditor Committee ("ICC") asserts security interests in the Colfax

Facility, and does not consent under Section 363(f), a sale free and clear of their interests will still be permissible because, as to the ICC, their interests, if any, or the amount of their interests, if any, are in fact the subject of a *bona fide* dispute, and they could be compelled to accept a money satisfaction of their interests in a legal equitable proceeding.

### Approval of Procedures for Assumption and Assignment of Executory Contracts and Unexpired Leases

31.    To facilitate and effect a sale of Assets, the Debtor will be required to assume and assign to the Prevailing Bidder certain unexpired manure agreements (the "Assumed and Assigned Contracts"). No later than twelve (12) days prior to the Sale Hearing, the Debtor shall cause notice to be provided to all counterparties to unexpired manure agreements that may be Assumed and Assigned Contracts (the "Cure Notice"). The Cure Notice shall provide the counterparties to the possible Assumed and Assigned Contracts notice of the amount that the Debtor believes must be cured upon the assumption and assignment as required under Bankruptcy Code Section 365 (the "Cure Amount").

32.    Except as may otherwise be agreed to by the parties to an Assumed and Assigned Agreements (with the consent of the Prevailing Bidder), on the Effective Date, the Debtor shall cure those defaults under the Assumed and Assigned Agreements that need to be cured in accordance with Bankruptcy Code Section 365(b) by (a) payment of the undisputed Cure Amounts, and/or (b) reserving amounts with respect to the disputed Cure Amounts. In the event of a dispute regarding the Cure Amount, any payments required, following entry of a Final Order resolving such dispute, shall be made as soon as practicable thereafter. If no objection is timely received, the Cure Amount set forth in the Cure Notice shall be controlling notwithstanding anything to the contrary in any Assumed Manure Agreement or other documents as of the date of the Cure Notice.

33. Except for Indiana Packers Corporation and Choice Connection, the deadline for Objections, if any, to the proposed assumption and assignment of the Assumed and Assigned Contracts, including, but not limited to, objections relating to the Cure Amount and/or adequate assurances of future performance, must be filed on or before 5:00 p.m. (prevailing Central Time) on April 29, 2013 (the "Regular Objection Deadline"). In the case of Indiana Packers Corporation and Choice Connection, their deadline for objections, if any, shall be at the Sale Hearing.

### APA Does Not Establish Any Sub Rosa Plan of Reorganization

34. A sale of assets may not be approved where such sale, rather than merely changing the composition of the Debtor's assets, either restructures the right of creditors or predetermines the rights of creditors under any future plan of reorganization. *See In re Braniff Airways, Inc.*, 700 F.2d 935, 939-40 (5th Cir. 1983); *In re Iridium Operating LLC*, 478 F.3d 452, 465-66 (2nd Cir. 2007); *In re Continental Air Lines, Inc.*, 780 F.2d 1223, 1227-28 (5th Cir. 1986).

35. In *Braniff,*, the Fifth Circuit held that an agreement between the Debtor and its creditors established a *sub rosa* plan of reorganization because, among other things, the agreement: (i) required that any future plan of reorganization allocate certain assets only to employees, shareholders or unsecured creditors of the Debtor; (ii) required the secured creditors to vote a portion of their deficiency claim in favor of any future plan of reorganization approved by a majority of the unsecured creditors' committee; and (iii) provided for the release of claims by all parties against the Debtors, its secured creditors and its officers and directors. 700 F.2d at 939-40.

36. Unlike *Braniff*, the transactions contemplated by the APA will not restructure the

rights of Debtor's creditors or predetermine the rights of such creditors under any future plan of reorganization.

37.   Furthermore, Debtor has articulated sound business justifications for selling the Assets now, rather than as part of a plan.  A Bankruptcy Code Section 363 sale motion should be approved if it is based on good business reasoning.  *In re Lionel Corp.*, 722 F.2d at 1070; *In re Equity Management Systems*, 149 B.R. 120 (Bankr. S.D. Iowa 1993) (Court considered some of the following factors: whether all parties in interest received reasonable notice; whether the purchase price is fair and reasonable; whether there is a sound business reason for the sale; and whether the proposed sale unfairly benefits insiders or proprietary purchasers, or unfairly favors a creditor or class).   All such factors have been met here.

38.   The Purchase Price (including the assumption of certain obligations) is a fair offer for these Assets at this time.  Furthermore, the Purchase Price will be tested in the marketplace via the auction and Bidding process.  The likelihood that a plan of reorganization will be confirmed very quickly is doubtful, and the future value of the assets is subject to being diminished due to external market forces.  Given the current economic climate, Debtor believes it would be imprudent to ignore such an attractive offer now when the value of the Assets could be adversely affected or deteriorate in the coming months prior to plan confirmation.  Basically, Debtor is taking the conservative approach that a "bird in hand is worth two in the bush," again subject to any higher and better offers under the Auction and Bidding Procedures.

### APA Was Negotiated at Arm's Length and in Good Faith

39.   The APA and the transactions related thereto were negotiated, have been, and are undertaken by Debtor and Purchaser at arm's length, without collusion and in good faith within the meaning of Bankruptcy Code Section 363(m), and Debtor accordingly requests that the Court

determine that the entire sale process will be conducted in good faith within the meaning of Bankruptcy Code Section 363(m) and that Seller and Purchaser are entitled to the protections of Bankruptcy Code Section 363(m). *See In re Brook Valley IV.*, 347 B.R. 662, 676 (B.A.P. 8th Cir. 2006).

40. In Debtor's view, the APA represents substantial value to Debtor's estate inasmuch as it provides favorable terms for the disposition of the Assets at a price that represents fair and reasonable consideration having a certain value. *See id.* At the conclusion of the Bidding process and auction opportunity, Debtor will have the highest and best offer to submit to this Court for approval.

**Reduction or Elimination of 14-Day Stay Under Bankruptcy Rules 6004(h) and 6006(d)**

41. Time is of the essence in approving and closing the sale, and any unnecessary delay in closing the sale could result in the collapse of the sale. Accordingly, this Court should waive the 14-day period staying any order to sell or assign property of the estate imposed by Bankruptcy Rules 6004(h) and 6006(d).

## CONCLUSION

Based upon the authorities and facts detailed above, Debtor submits that the Court should approve, at the First Hearing, the Auction and Bidding Procedures and prescribe the manner of notice; and at a Second Hearing to be held promptly after the Auction, or if no Auction is held, within seven (7) days after the Competing Bid Deadline, subject to the terms of the Auction and Bidding Procedures, the Court should approve the sale of the Assets to Purchaser or such other successful bidder at the Auction. Such relief is warranted because Debtor has shown that the transactions connected to the APA are in the best interests of Debtor, its estate and creditors, and because the decision to enter into the APA was reached in the exercise of Debtor's sound

business judgment, after careful deliberation of its consequences and possible alternatives.

WHEREFORE, the Debtor respectfully requests that the Court hear this Motion and enter an Order: (a) finding that due and adequate notice and an opportunity to be heard in accordance with all applicable law was given to all creditors and interested parties in the Chapter 11 Case, and any and all other affected or interested parties; (b) approving the Auction and Bidding Procedures, Cost and Expense Reimbursement, prescribing the manner of notice, and (c) setting a Second Hearing to, subject to the Auction and Bidding Procedures; (i) authorize the sale of the Assets free and clear of all liens, encumbrances, claims and interests, including but not limited to mortgage liens, personal property liens, construction and mechanics' liens, judgment liens, rights of first refusal and all other claims; (ii) find that the sale be effective immediately and that the stay provisions of Bankruptcy Rules 6004(h) and 6006(d) do not apply; and (d) finding that nothing related to or arising out of this Agreement or the sale Order shall cause Purchaser to be deemed to be in control of Seller, or to be acting as a "responsible person" with respect to the operation and management of Seller, either prior to or after the Closing and (e) provide such other relief as is just and proper under the circumstances.

Date:  April 18, 2013

Respectfully submitted,

/s/ Jeffrey D. Goetz
Jeffrey D. Goetz, Esq., IS #9999366
Bradshaw Fowler Proctor & Fairgrave, P.C.
801 Grand Avenue, Suite 3700
Des Moines, IA 50309-8004
515/246-5817
515/246-5808 FAX
goetz.jeffrey@bradshawlaw.com

General Reorganization Counsel
for Natural Pork Production II, LLP
Debtor and Debtor-in-Possession

-15-

CERTIFICATE OF SERVICE

      This document was served electronically on parties who receive electronic notice through CM/ECF as listed on CM/ECF's notice of electronic filing.

/s/     LuAnn Gilbert

## SUMMARY OF EXHIBITS

The following exhibits in reference to the Motion for Order (1) Approving Auction and Bidding Procedures; (2) Approving Manner of Notice; and (3) Authorizing Sale of Assets Free and Clear of Liens, Claims and Encumbrances, Subject to Higher or Better Offers is available upon request:

    Exhibit A:    Asset Purchase Agreement

    Exhibit B:    Amended Auction and Bidding Procedures