UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF IOWA (DES MOINES)

| | |
|---|---|
| In Re:<br><br>**NATURAL PORK PRODUCTION II, LLP**,<br><br>Debtor and Debtor in Possession. | Lead Case No. 12-02872-11<br>Chapter 11<br>Hon. Anita L. Shodeen<br><br><br>**OBJECTION TO DEBTORS' JOINT DISCLOSURE STATEMENT FOR LIQUIDATING PLAN OF REORGANIZATION DATED JANUARY 21, 2014**<br><br>**HEARING SET APRIL 4, 2014 AT 9:30 A.M. COURTROOM 1 U.S. COURTHOUSE ANNEX** |

**COME NOW**, the IC Committee and all parties for whom Brown, Winick, Graves, Gross, Baskerville & Schoenebaum, P.L.C. filed a claim on behalf of in the above-captioned matter, as Creditors and Parties-in-Interest by and through their counsel and for their Objection to the Debtors' Joint Disclosure Statement for Liquidating Plan of Reorganization dated January 21, 2014 states as follows:

1.     On January 21, 2014 Debtors Natural Pork Production II, LLP ("NPPII"), Crawfordsville, LLC, Brayton, LLC, North Harlan, LLC and South Harlan, LLC (collectively, "Debtors") filed a Joint Disclosure Statement for Liquidating Plan of Reorganization dated January 21, 2014 (Docket 564).

2.     The IC Committee is a Creditor and Party-in-Interest and has filed a Proof of Claim in the amount of $18,088,897.35 (Claim No. 21).  The remaining parties represented by Brown, Winick, Graves, Gross, Baskerville & Schoenebaum, P.L.C. are also Creditors and

Parties-in-Interest and have filed Proofs of Claims detailing such interests (Claim Nos. 30-141, 143, 146-154).

3.      The parties identified in paragraph 2, for reasons set forth in more detail below, object to the Disclosure Statement submitted pursuant to 11 U.S.C. section 1125, because the Statement does not contain "adequate information" to allow creditors and hypothetical investors to make an informed judgment about the Plan.  See In re Westland Oil Development Corp., 157 B.R. 100, 102 (S.D. Tex. 1993) (citing 11 U.S.C. § 1125(a) and describing the specifics that the debtor must disclose to creditors to provide "adequate information").  "Disclosure is the 'pivotal' concept in chapter 11 reorganization."  Id. (citing 5 Collier on Bankruptcy, ¶ 1125.01 (15th ed. 1992)).

4.      Debtors' Joint Disclosure Statement reflects that there are eleven classes of claims (Classes 1 through 11) and three classes of equity interest (Classes 12 through 14).

5.      According to the Joint Disclosure Statement, one of the classes of impaired claims is Class 6.  See Disclosure Statement, p. 12.  Class 6 includes the IC Committee and the persons or entities that disassociated from NPPII and became party to the Settlement and Intercreditor Agreement ("SIA").  The Debtor proposes to disallow the Class 6 claims in their entirety with no dividend or payment.  See Disclosure Statement, pp. 20-21.

6.      Bankruptcy Code section 1129(a)(10) provides that the Court shall confirm a plan only if the following requirement is met: "If a class of claims is impaired under the plan, at least one class of claims impaired under the plan has accepted the plan, determined without including any acceptance of the plan by any insider."

2

7.      It should be reasonably anticipated and concluded that the Class 6 creditors, identified as the only impaired class of claims that would be allowed to vote[1], will vote to reject the Plan as presently provided, because it provides for complete disallowance of their claims.

8.      The Plan on its face cannot meet the section 1129(a)(10) requirement for confirmation, which renders the Plan fatally flawed and incapable of confirmation. As such, the Court should not approve the Disclosure Statement relating to such Plan. See 266 Washington Associates, 114 B.R. 257 (E.D.N.Y. 1992).

9.      In the Disclosure Statement, Debtors acknowledges the Plan's fatal flaw:

Since Impaired Classes exist, the Court cannot confirm the Joint Plan unless (1) at least one Impaired Class has accepted the Joint Plan without counting the votes of any Insiders within that Class, and (2) all Impaired Classes have voted to accept the Joint Plan, unless the Plan is eligible to be confirmed by "cramdown" on non-accepting Classes, as discussed later in Paragraph 7 of this Section.

See Disclosure Statement, p. 13 at ¶ 5.

10.     The Disclosure Statement further provides that "[t]he Debtors have disputed, will continue to dispute, and will seek a judicial determination of disallowance of the alleged secured claims of the [IC Committee], individually and collectively on behalf of the signatories to the Settlement and Intercreditor Agreement ('SIA Parties')." Disclosure Statement, p. 6.

11.     The Disclosure Statement also states that "[t]he Joint Plan reserves for the Debtors and the Reorganized Debtor the right to initiate additional petitions and lawsuits, and

---

[1] On page 12 of the Disclosure Statement, NPPII identifies Classes 6, 12, 13 and 14 as "Impaired" and therefore entitled to vote on the Plan. However, it is not clear why Class 11, which similar to Class 12 in that the Plan requires them to disgorge payments already made by NPPII as a condition precedent to obtaining any payment under the Plan, is not identified as an Impaired Class. Furthermore, it is not clear why equity (identified in the Disclosure Statement as Classes 13 and 14) would get to vote when such equity has been worth zero for quite some time. NPPII's plan, in effect, attempts to recast the debt claims of those in Class 6 completely as equity, and then proposes to return funds to the equity holders (such as the sole Manager and largest equity holder, Lawrence Handlos), even though such equity – according to Mr. Handlos himself when testifying under oath – has had no value for a long period of time.

pursue Claims and Causes of Action against any Creditor or Interest Holder, prior to or after Confirmation, including but not limited to the Adversary Proceedings identified above, or any other adversary proceeding or state court petitions or lawsuits to which the Debtors or Reorganized Debtor are entitled.  The Debtors do not contemplate or believe any litigation will affect the feasibility of the Joint Plan, and the Joint Plan is not dependent on any potential recovery from any legal actions against others." Disclosure Statement, pp. 40-41.

12.    The Disclosure Statement is inadequate as it fails to explain the impact of these pending or future adversary proceedings on the proposed distribution under the Plan.  See In re United States Brass Corp., 194 B.R. 420, 426 (E.D. Tex. Bankr. 1996) (approving a disclosure statement that made it clear as to the "diametrically opposed viewpoints" between the two arguments and when it made creditors aware of the two different viewpoints); In re Mickey's Enterprises, Inc., 165 B.R. 188, 193-94 (W.D. Tex. Bankr. 1994) (holding that a general litigation retention clause was misleading to the Court and all creditors because it failed to disclose bankruptcy litigation that was likely to arise).  In fact, it asserts that the Plan is *not* dependent upon the adversary proceedings. See Disclosure Statement, p. 41.  This could not be further from the truth, because the pending adversary proceedings involve priority, validity of a settlement agreement with creditors, whether certain parties would be required to pay back previous payments made by NPPII and the like.  The Disclosure Statement is inadequate as it fails to take into account and explain in any manner the impact on the Plan should the Court should rule in favor of the IC Committee and the SIA Parties in the adversary proceedings.  This is particularly true with respect to Adversary Proceeding No. 12-30098, where a ruling adverse to the Debtor would result in the finding of priority of the IC Committee and SIA Parties ahead of other classes of claims, including Class 9 claims, which the Debtor proposes to pay in full on

4

the effective date of the Plan in the amount of $7,852,291.57.  The Disclosure Statement fails to address this critical issue and fails to discuss the alternatives to and the impact of a ruling against Debtors on the Plan as currently proposed.  As such, the Disclosure Statement is inadequate and should not be approved.

13.    The Disclosure Statement and related Plan also mislead the creditors (or any other readers) to believe that the determination as to priority between the subordinated debt and the SIA Parties has already been decided. This misleading nature is shown by inquiries that undersigned counsel received from "claims traders."  In a recent status conference with the Court, Debtors' counsel asserted that the Disclosure Statement and proposed Plan were confirmable simply because claims traders offered to buy and did buy a limited number of subordinated debt claims.  Upon discussions with these claims traders, it became clear that they did not understand that there was a pending adversary action that could completey reverse  the priority of the claims assumed by Debtor's counsel in the Disclosure Statement, if SIA debt is found to have priority over subordinated debt.  Once it was explained to such claims traders that a determination had not been made by the Court and an action remained pending on this issue, many offers were withdrawn and/or the offers ceased.  If claims traders – who review bankruptcy filings regularly – were misled by the information provided in the Disclosure Statement, it is clear that a layperson reading such information would be similarly confused and misled as to the impact of the pending adversary actions on the Plan.

14.    In addition to failing to identify the impact of any decision in Adversary Case No. 12-30098, the Disclosure Statement fails to inform the recipients that the proposed Plan assumes complete success of Debtors' position in all of the pending adversary actions.  The entire Disclosure Statement and Plan is based upon this false premise.  For instance, in an

unprecedented move, NPPII seeks to require approximately thirty (30) individuals to disgorge all or some portions of payment they received on their dissociated debt. Disgorgement can only be accomplished through preference actions and only under certain circumstances, none of which have been proven or established. In addition, after claiming that dissociated debt should be treated as equity (which, again, has not been established or proven and which ignores an Iowa Court of Appeals determination directly on point as to certain pre-impairment dissociated partners), Debtors seek to further diminish the dissociated partner interests by unfairly splitting any remaining equity. The Disclosure Statement indicates that 2/3 of the equity will be given to certain equity holders (Class 13, which includes the largest holder of worthless equity, current sole Manager Lawrence Handlos) and only 1/3 will be given to those who dissociated (Class 14). See Disclosure Statement, pp. 34-35. NPPII then separates out seven additional individuals who fit in Class 14 and moves them to Class 13. Neither the basis for the 1/3 versus 2/3 split nor the reasoning for moving those seven individuals out of Class 14 and into Class 13 is described or explained in the Disclosure Statement. In a recent status conference, Debtors' Counsel indicated that the split was to "account for" the "wrongful dissociation" of those persons in Class 14. This is yet again another issue that has not been established by evidence and is the subject of a pending adversary action (Adversary Proceeding No. 12-30081).

15.    It is clear that Debtors' Disclosure Statement and Plan attempts to deprive the litigants in the pending adversary actions of their day in Court. Rather than affording the parties their due process rights to present testimony and evidence to support or defend the claims in the adversary actions, Debtors violate Federal Rule of Bankruptcy Procedure 7001 in their attempt to adjudicate these issues (and all under the false assumption that Debtors will be 100 percent successful on every single issue) through the Disclosure Statement and Plan Confirmation

6

process.  This is certainly not identified or described clearly in the Disclosure Statement and further leads to the conclusion that such a Plan cannot be confirmed and thus, the Disclosure Statement relating to such Plan should not be approved either.

16.    In addition to failing to address these issues related to the pending adversary actions, Debtors' Disclosure Statement contains statements best described as inaccurate and slanderous and/or not the kind of information that would be relevant for a class to make an informed judgment about the Plan.  For instance, the Disclosure Statement fully incorporates and attaches as Exhibit A the Statements of Undisputed Fact that it submitted during the summary judgment proceedings in Adversary Proceeding No. 12-30098.  See Disclosure Statement, pp. 41-42.  Debtors assert that this information "clearly and concisely summarizes the long, detailed and complex history and background of the Debtor and the events and causes leading up to the filing of these Bankruptcy Cases."  Disclosure Statement, p. 41.[2]  Debtors fail to mention that nearly all of the Statements of Undisputed Facts were contested by the IC Committee and the SIA Parties that it represents.  Also, due to the timing of the Disclosure Statement, it does not contain information about the Court denial Debtor's Motion for Summary Judgment nor the upcoming trial on this matter.  See Disclosure Statement, p. 41.  The Disclosure Statement provides absolutely no information regarding the position of the Dissociated Partners and SIA Parties.  See In re United States Brass Corp., 194 B.R. at 426 (describing adequacy of disclosure statement that discloses the opposing viewpoints of a pending dispute).  Because this information is misleading and inaccurate and provides only partial information to the Creditors, it should all

---

[2] In addition to fully incorporating NPPII's Statements of Undisputed Fact, which were in fact disputed, Debtors' description of their objection to the Class 6 claims restates these unproven and slanderous allegations in summary form.  See Disclosure Statement, pp. 21-22.  Again, Debtors do not even mention the fact that all of these allegations are contested or describe the position of the parties filing this Objection, thereby misleading the recipient of the Disclosure Statement.

be stricken from the Disclosure Statement or otherwise revised to include a realistic discussion of

the opposing viewpoints in Adversary Proceeding No. 12-30098 as well as the impact of any

ruling on the proposed Plan.   The same is true with regard to the Disclosure Statement's

discussion of the other pending adversary actions, which does not disclose that the claims are

fully disputed nor the position of the opposing parties. See Disclosure Statement, p. 40.

     17.    In addition to these issues, the Joint Disclosure Statement includes the following

incorrect information:

     a.   The description of the outcome of the legal proceedings in Craton Capital, L.P. v.

Natural Pork Production II, LLP is materially misleading.   Under "Status or

Disposition," Debtors do not describe the fact that the Court of Appeals held that

Craton and Kruse, as pre-impairment dissociated partners, were entitled to notes

under the Partnership and Buy-Sell Agreements. See Disclosure Statement, p. 39.

This fact is essential to Debtors' now contrary position in the Disclosure

Statement and Plan, which places all dissociated partners, including pre-

impairment dissociated partners[3] such as Craton and Kruse in the position of

equity holders, even though the pre-impairment dissociated partners have already

received a Court determination that they were entitled to debt instruments

(promissory notes) and therefore are clearly creditors of the Debtor.   The

Disclosure Statement does not identify the amount of the claims made by those in

Class 6, which Debtors now seek to completely disallow, thereby further

undermining the recipient's understanding of the impact of a contrary finding to

---

[3] The Pre-Impairment Dissociated Partners are identified as follows in Schedule 1 of the SIA: VanBaale, LLC, Scott & Dena Leinen, Dennis Greer, Craton Capital, Kruse Investment Co., Don Schomers, Walter & Laurie Staiert, Gary & Jackie Schaben, Lane Asset Management, Philip Lane/Defined Benefit, Eli Lane, Harriet Lane, Harriet Lane Trust, Philip Lane/Money Purchase Plan, Philip Lane, Amanda Howland (two accounts), Jonathan Lane from Eli Lane, Jessica Lane from Eli Lane,, Eli, Philip & Richard Lane and Steve Salzinger.

this assumption on the Plan.  See Disclosure Statement, pp. 20-22.  In the aggregate, the claims of the SIA Parties exceed $18 million.  Accordingly, a decision favoring the priority of the SIA debtholders and former dissociated partners over the subordinated debt will most certainly have a significant impact on the Disclosure Statement and the associated Plan.

b. Debtors list the case of IC Committee vs. Lawrence Handlos as part of the legal proceedings "initiated by, against or involving the Debtor Natural Pork." Disclosure Statement, pp. 39-40.  This is patently false, as Debtors are well aware. That case does not involve NPPII except to the extent that Handlos is being sued for actions he took as manager of NPPII.  Furthermore, even if it were appropriate to disclose this action on the Disclosure Statement, it should be clarified that the Shelby County District Court specifically denied Mr. Handlos' request for a stay of that action and held that the case against Mr. Handlos personally is not related to NPPII's bankruptcy proceeding.

c. The Disclosure Statement inappropriately includes Purina Mills, LLC, Trupointe Cooperative, Inc. and a claim by Gary Weihs for a development fee in the class of Trade Debts.  See Disclosure Statement, pp. 23-24.  Purina Mills, LLC and Trupointe Cooperative, Inc.'s claims are based upon Subordinated Promissory Notes that are identical to those described in Class 9.  It is the understanding of the parties filing this Objection that Weihs' claim for a development fee was also treated on the books of NPPII as subordinated debt.  There is no description in the Disclosure Statement as to why these claims are now being treated as Trade Debt.

9

d. In describing Class 9, Debtors also make statements that are patently false. On page 24 of the Disclosure Statement, Debtors state that the "Sub Debt Notes were issued to Current and Dissociated Equity Interest holders in connection with their subscription as Limited Liability Partners of Natural Pork and their equity investment in same." This is untrue, because many individuals were given subordinated debt without also obtaining an equity interest. It is the understanding of the parties filing this Objection that the following individuals identified in Class 9 had only subordinated debt and no equity interest: Alan Axelrod, Arbie Axelrod, Jessica Lane, Gerald Lapke Revocable Trust, JoAnn Lapke Revocable Trust, Jill Oestreicher, Preston Pond (Interagtive), Thomas Schliesman, Joe Zaccone, and Martin and Mary Jane Zaccone.

e. With respect to Class 9, Debtors assert that members of such Class will receive 3 percent interest per annum from the Petition Date to the Effective Date. See Disclosure Statement, p. 25. There is no indication of what the expected or potential total impact of this additional interest will be. There is also no explanation as to why Class 9 is the only Class receiving any interest. Furthermore, although the table purports to show amounts that are "without interest," the parties filing this Objection understand that these amounts do include some interest. The Disclosure Statement, however, does not identify what amount of the total provided is interest, when such interest began to accrue or the rate of accrual.

f. In describing Classes 11 and 12, Debtors assert that the January 2012 payment "was initially characterized as a partial return of equity on account of

10

dissociation" from NPPII.  See Disclosure Statement, pp. 30, 32.  This is also false.  Neither NPPII, nor its accountants, nor the recipients of those payments ever characterized the January 2012 payment as a return of equity.  Rather, it was always characterized as a payment on debt or promissory notes that were required to be issued to dissociated partners pursuant to the Partnership and Buy-Sell Agreements of NPPII.  The debts to dissociated partners were always snad consistently classified as debt on the books of NPPII as advised by its outside accounting firm, contrary to now-purported classification to benefit Mr. Handlos and other holders of long-worthless equity.  Again, this statement is misleading to the recipient of the Disclosure Statement as to how these payments have actually been treated by NPPII and does not provide an accurate picture of the history of NPPII to date.

g.  There are a number of errors in the Disclosure Statement's calculations.  One such error is in the list of Class 11 Claim Holders.  For Claimant #23 (Michael Westphalen), Debtors listed amounts that actually pertain to Mark Zaccone, and the information listed for Mark Zaccone (#24) is incorrect.  This results in an approximately $300,000 overstatement of the total amount of expected disgorgement for Class 11 Claim Holders.  There are also accounts or claims that are unaccounted for in any of the Classes.  For instance, Ron Beach has a claim that is separate from the one identified for Ron and Mona Beach that is no where to be found in the Disclosure Statement (compare Claim Nos. 69 and 70).

18.    Debtors' Counsel indicated that Debtors intend to revise the Disclosure Statement.  Although generalities have been described as to what the revisions will be, the

11

specifics of such revisions have not yet been provided.  Accordingly, the filers of this Objection hereby reserve the right to file additional objections once such revisions or amendments have been filed with this Court.

**WHEREFORE**, the IC Committee and all parties for whom Brown, Winick, Graves, Gross, Baskerville & Schoenebaum, P.L.C. has filed a claim on behalf of in the above-captioned matter respectfully request the Court sustain their Objection and not approve the Joint Disclosure Statement as filed January 21, 2014, and that the Court grant such other and further relief as is just and equitable.

Respectfully Submitted,

*/s/Michael P. Mallaney*

Michael P. Mallaney, AT 0004935
HUDSON, MALLANEY, SHINDLER & ANDERSON, P.C.
5015 Grand Ridge Drive, Suite 100
West Des Moines, IA 50265-5749
Telephone:     (515) 223-4567
Facsimile:     (515) 223-8887

ATTORNEY FOR THE IC COMMITTEE

*/s/ Rebecca A. Brommel*

Rebecca A. Brommel, AT0001235

BROWN, WINICK, GRAVES, GROSS,
BASKERVILLE & SCHOENEBAUM P.L.C.
666 Grand Avenue, Suite 2000
Des Moines, IA  50309
Telephone: (515) 242-2452
Facsimile: (515) 323-8552
E-mail: brommel@brownwinick.com

ATTORNEYS FOR THE IC COMMITTEE AND
THE SIA PARTIES

## CERTIFICATE OF SERVICE

On March 28, 2014, this document was served electronically on parties who receive electronic notice through CM/ECF as listed on CM/ECF's notice of electronic filing.

*/s/ Rebecca A. Brommel*

Rebecca A. Brommel