# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| In re: | ) | Lead Case No. 12-02872-als11 |
| **NATURAL PORK PRODUCTION, II, LLP** | ) | |
| | ) | Chapter 11 |
| Debtor and Debtor in Possession. | ) | |
| | ) | Hon. Anita L. Shodeen |
| P.O. Box 468 | ) | |
| Harlan, IA  51537 | ) | |
| | ) | |
| EIN:  03-0480873 | ) | |
| **CRAWFORDSVILLE, LLC** | ) | Affiliated Case No. 12-03748-als11 |
| | ) | |
| Debtor and Debtor in Possession | ) | |
| | ) | |
| EIN: 26-2579415 | ) | |
| **BRAYTON, LLC** | ) | Affiliated Case No. 12-03749-als11 |
| | ) | |
| Debtor and Debtor in Possession | ) | |
| | ) | |
| EIN: 26-2579316 | ) | |
| **NORTH HARLAN, LLC** | ) | Affiliated Case No. 12-03750-als11 |
| | ) | |
| Debtor and Debtor in Possession | ) | |
| | ) | |
| EIN: 26-2579476 | ) | |
| **SOUTH HARLAN, LLC** | ) | Affiliated Case No. 12-03751-als11 |
| | ) | |
| Debtor and Debtor in Possession | ) | |
| | ) | |
| EIN: 26-2579560 | ) | |

# FIRST AMENDED JOINT LIQUIDATING PLAN
# OF REORGANIZATION DATED APRIL 2, 2014

Jeffrey  D. Goetz, Esq., IS#9999366
Bradshaw, Fowler, Proctor & Fairgrave, PC
801 Grand Avenue, Suite 3700
Des Moines, IA  50309-8004
515/246-5817
515/246-5808 FAX
goetz.jeffrey@bradshawlaw.com
General Reorganization Counsel

Aaron L. Hammer, Esq.
Mark S. Melickian, Esq.
Sugar Felsenthal Grais & Hammer LLP
30 N. LaSalle Street, Ste. 3000
Chicago, IL  60602
312/704-9400
312/372-7951  FAX
ahammer@sugarfgh.com
mmelickian@sugarfgh.com
Counsel to the Official Committee of
Unsecured Creditors

TABLE OF CONTENTS

ARTICLE II - DESIGNATION AND TREATMENT OF UNCLASSIFIED CLAIMS    14
    A.    Designation.  Unclassified Claims consist of the following:    14
B.   Treatment.    14
ARTICLE III – CLASSIFICATION AND TREATMENT OFIMPAIRED AND UNIMPAIRED
CLASSES AND INTERESTS    15
    A.    Class 1 – Allowed Priority Non-Tax Claims    15
    B.    Class 2 – Allowed Secured Claim of AgStar    16
    C.    Class 3 - Allowed Secured Claim of First Farmers    16
    D.    Class 4 – Allowed Secured Claim of GE    17
    E.    Class 5 – Allowed Secured Claim of Met Life    17
    F.    Class 6 – Contested Secured Claims of ICC/SIA Parties.    18
    G.    Class 7 – Allowed Secured and Unsecured Claims on Executory Contracts and
Unexpired Leases    20
    H.    Class 8 – Allowed General Unsecured Claims    20
    I.    Class 9 – Allowed Subordinated Unsecured Claims (No January 2012 Distribution)    22
    J.    Class 10 – Allowed Subordinated Unsecured Claims (Received January 2012
Distribution in an amount less than Sub Debt Note Claim)    24
    K.    Class 11 – Allowed Subordinated Unsecured Claims (Received January 2012
Distribution in amount greater than Sub Debt Note Claim on Petition Date)    27
    L.    Class 12 – Contested Dissociated Equity Interests (Received January 2012 Distribution
but held no Allowed Sub Debt Note Claim) (Total Disgorgement)    30
    M.    Class 13 – Allowed Current Equity Interest Holders    32
    N.    Class 14 – Dissociated Equity Interests    33
    O.    Class 15 – Opt-Out Dissociated Equity Interests    35
    P.    Reservation of Rights on Classification Disputes.    35
ARTICLE IV - MEANS FOR IMPLEMENTATION OF THE JOINT PLAN    36
    A.    General Summary.    36
    B.    The Contested Interests Reserve.    37
    C.    Equity Interests Fund - Deposits and Distributions.    38
    D.    Effect of Confirmation.    39
    E.    Payment of Allowed Claims.    43
    F.    Sale of Property    43
    G.    Pursuit of Disgorgement from Creditors and Interest Holders    44
    H.    Dissolution of Natural Porc Production Olt, SRL    44
    I.    Amending Tax Returns    45
    J.    Litigation.    45
    K.    Post Confirmation Management.    46
    L.    Post Confirmation Compensation of Professional Persons.    46
    M.    All Section 1129(a)(4) Payments Subject to Court Review.    47
    N.    Default    47
    O.    Assumption or Rejection of Unexpired Leases and Executory Contracts.    48
    P.    Objections to Claims and Interests.    50
    Q.    Resolution of Disputes.    50

| R. | Settlement. | 50 |
|---|---|---|
| S. | Allowed Amount of Claims and Interests. | 51 |
| T. | Unclaimed Funds. | 51 |
| U. | Modification/Amendment of Plan. | 51 |
| V. | Post-Confirmation Status Reports and Final Decree. | 52 |
| W. | Termination of the Official Committee | 53 |
| X. | Post-Confirmation Jurisdiction. | 53 |
| Y. | Bar Date for Administrative Expense Claims. | 55 |
| Z. | Retirement Benefits. | 56 |
| AA. | General Provisions. | 56 |

The Debtors and Debtors-in-Possession NATURAL PORK PRODUCTION, II, LLP

("Natural Pork"), CRAWFORDSVILLE, LLC ("Crawfordsville"), BRAYTON, LLC

("Brayton"), NORTH HARLAN, LLC ("North Harlan"), and SOUTH HARLAN, LLC ("South

Harlan") (hereinafter referred to as "NPPII" or "Debtors" or "Plan Proponents") hereby propose

this First Amended Joint Liquidating Plan of Reorganization dated April 2, 2014 (the "Joint

Plan") pursuant to Bankruptcy Code Section 1121(a).

ARTICLE I - DEFINITIONS

As used in this Joint Plan, the following terms shall have the respective meanings

specified below:

Administrative Expense Claim:  Any cost or expense of administration of the Bankruptcy

Cases that is entitled to priority in accordance with Bankruptcy Code Sections 503(b) and

507(a)(1), including, without limitation: any actual and necessary expenses of preserving the

Debtor's estates and of operating the Debtor's businesses from and after the Petition Date to and

including the Confirmation Date; all allowances of compensation and reimbursement of costs

and expenses to Professional Persons and/or the Official Committee, as approved by a Final

Order of the Court; and any fees or charges assessed against the Debtors' estates under Chapter

123 of Title 28, United States Code.

Administrative Expense Claimant:  Any Person entitled to payment of an Administrative

Expense Claim.

Adversary Proceedings:  The adversary proceedings initiated by the adversary complaints

filed by the Debtors in the Bankruptcy Cases as identified in the table below:

|   | Case No. | Filed date | Case Name | Summary |
|---|----------|------------|-----------|---------|
| 1 | 12-30081 | 9/14/2012 | Natural Pork v. AgriCulture, Inc. | Fraudulent Transfers; Preferences, Recovery of Money & Property |

| 2 | 12-30098 | 12/5/2012 | Natural Pork v. IC Committee, et al | Determination of Removed Claim or Cause |
| 3 | 13-30014 | 2/4/2012 | Natural Pork v. First National Bank of Omaha | Fraudulent Transfers; Preferences, Recovery of Money & Property |
| 4 | 13-30016 | 2/7/2012 | Natural Pork v. IC Committee | Fraudulent Transfers; Recovery of Money & Property |
| 5 | 13-30019 | 2/25/2013 | Natural Pork v. Beach, et al | Fraudulent Transfers; Preferences, Recovery of Money & Property |
| 6 | 13-30021 | 3/6/2013 | Natural Pork v. Craton Capital, LP et al | Fraudulent Transfers; Preferences, Recovery of Money & Property |
| 7 | 13-30023 | 3/12/2013 | Natural Pork v. Amrozowicz et al | Fraudulent Transfers; Preferences, Recovery of Money & Property |
| 8 | 13-30031 | 4/8/2013 | North Harlan, LLC v. IC Committee | Fraudulent Transfers; Preferences, Recovery of Money & Property |

Allowed Claim:  Any Claim against the Debtors, (a) (i) proof of which was filed on or before the date designated by the Court as the last day for filing proofs of claim, or which Claim has been deemed to be timely filed by Court order, or (ii) that has been or is hereafter listed by the Debtors in the Debtors' Schedules as liquidated in amount and not disputed or contingent as to liability, and (b) in either case, is a Claim as to which no objection to allowance thereof has been filed within the applicable period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules or the Court, or (c) that has been allowed in whole or in part by an order or judgment of the Bankruptcy Court that is no longer subject to appeal or certiorari proceeding and as to which no appeal or certiorari proceeding is then pending.

Bankruptcy Cases:  The Natural Pork Case, the Crawfordsville Case, the Brayton Case, the North Harlan Case and the South Harlan Case collectively.

Bankruptcy Code:  The United States Bankruptcy Code, 11 U.S.C. § 101, et seq., as amended.

Bankruptcy Court or Court:  The unit of the United States District Court for the Southern District of Iowa, constituted pursuant to 28 U.S.C. § 151, having jurisdiction over the Bankruptcy Cases to the extent of any reference made pursuant to 28 U.S.C. § 157(a), or in the

event such court ceases to exercise jurisdiction over the Bankruptcy Cases, such court or adjunct thereof that has jurisdiction over the Bankruptcy Cases.

Bankruptcy Rules: The Federal Rules of Bankruptcy Procedure, as amended, as applicable to the Debtors' Bankruptcy Cases.

Brayton Case: The voluntary Chapter 11 case filed by Brayton, LLC on December 7, 2012, in the U.S. Bankruptcy Court for the Southern District of Iowa and assigned Case No. 12-03749-als11.

Business Day: Any day that is not a Saturday, Sunday or legal holiday as identified in Bankruptcy Rule 9006.

Cash: Cash and cash equivalents, including, but not limited to, bank deposits, checks and other similar items.

Causes of Action: All causes of action of any kind held by the Debtors whether or not such causes of action are the subject of presently pending lawsuits, adversary proceedings or appeals, including, without limitation, (a) causes of action belonging to the Debtors as of the Petition Date; (b) causes of action belonging to the Debtors that arose after the Petition Date; and (c) rights exercisable by the Debtors as Debtors-in-Possession pursuant to Bankruptcy Code Sections 506, 510, 544, 545, 547, 548, 549, 550 or 553.

Claim: Any right to payment from the Debtors, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured, or any right to an equitable remedy for breach of performance if such breach gives rise to a right to payment from the Debtors, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

4

Claims Bar Date: January 8, 2013, in the Natural Pork case and April 23, 2013, in the

Crawfordsville, Brayton, North Harlan, and South Harlan cases, as established by Court Order

and pursuant to Bankruptcy Rule 3003(c)(3), after which any Proof of Claim or Interest filed will

not be allowed (unless by Court Order) and will have no effect upon the Joint Plan; and the

holder of such filed Proof of Claim or Interest shall have no right to vote upon or participate in

any Distributions under the Joint Plan.

Claims Objection Date:  The first Business Day after the 60th day after the Effective

Date.

Class:  A group of Claims or Interests classified together in a Class designated in Article

III of this Plan.

Confirmation Date:  (a)  The first Business Day after the expiration of time for an appeal

of the Confirmation Order, provided that no appeal of the Confirmation Order has been timely

filed and a stay pending appeal granted; or (b) the first Business Day after the expiration of the

time to seek further appeal of the Confirmation Order, in the event that an appeal of the

Confirmation Order has been filed, and a stay of the Confirmation Order pending appeal has

been granted; or (c) the first Business Day after the expiration or termination of any stay pending

appeal.

Confirmation Order:  The order entered by the Court confirming the Joint Plan in

accordance with the provisions of Chapter 11 of the Bankruptcy Code.

Contested Claim:  Any Claim as to which the Debtors or any party in interest has filed an

objection in accordance with the Joint Plan, the Bankruptcy Code or the Bankruptcy Rules,

which objection has not been finally determined, i.e., an objection that is subject to appeal or

certiorari proceeding, or which the Debtors' schedules list as contingent, disputed or unliquidated.

Contested Interest:  A interest held by a Dissociated Equity Interest holder who (a) votes against confirmation of the Joint Plan, and/or (b) if such interest is treated in Class 12, fails or refuses to consensually disgorge and pay back to the Debtors all of the amounts such Dissociated Equity Interest holder received from the January 2012 Distribution.

Contested Interest Reserve:  The cash reserve established in favor of holders of Contested Interests in an amount sufficient to make a full distribution to such Contested Interests as if such interests were allowed in full as Class 6 claims and are not otherwise subject to equitable subordination pursuant to Bankruptcy Code Section 510.

Crawfordsville Case:  The voluntary Chapter 11 case filed by Crawfordsville, LLC on December 7, 2012, in the U.S. Bankruptcy Court for the Southern District of Iowa and assigned Case No. 12-03748-als11.

Creditor:  Any Person who has a Claim against the Debtors that arose on or before the Petition Date, or a Claim against the Debtors of any kind specified in Section 502(g), 502(h) or 502(i) of the Bankruptcy Code.

Current Equity:  The individuals and entities holding limited liability partnership Interests, represented by units, in Natural Pork on the Petition Date, as identified in the table below:

| Name | Units | | |
|---|---|---|---|
| Bloomquist, Cynthia | 3.27 | Ford, Michael | 1.25 |
| Burge, Wendell | 1.85 | Gray, Randy | 0.21 |
| Cass, Joseph & Amy | 13.53 | Handlos, Lawrence & Doris | 406.59 |
| Christofferson, Paul & Susan | 2.50 | Handlos, Pat | 1.82 |
| Croghan, Pete & Lois | 1.81 | Juckem, Jay & Denise | 5.49 |
| D&G Farms | 38.49 | Lane, Philip | 11.70 |
| Finken, Bob | 1.17 | Lorack, Tim | 0.97 |
| | | Lorack, Tim | 15.23 |

| | | | | |
|---|---|---|---|---|
| Lorack, Todd | 2.25 | | Wigley, Michael | 3.12 |
| Lorack, Todd | 14.72 | | Wittrup, Richard (Trust) | 4.36 |
| Neitzel, Charles | 3.32 | | Wood, Mark & Nancy | 11.33 |
| Nyman, Mark & Shari | 0.14 | | | |
| Schwartz, Gail | 1.14 | | Total | 549.53 |
| Thorbeck, David | 3.27 | | | |

<u>Debtors</u>:  Natural Pork Production II, LLP; Crawfordsville, LLC; Brayton, LLC; North Harlan, LLC; South Harlan, LLC.

<u>Debtors in Possession</u>:  Debtors, as debtors in possession, pursuant to Bankruptcy Code Sections 1107 and 1108.

<u>Disbursing Agent</u>:  The Disbursing Agent shall be the General Reorganization Counsel of the Debtors.  The Disbursing Agent may serve without bond.

<u>Dissociated Equity</u>:  The individuals and entities who previously held limited liability partnership Interests in Natural Pork and notified Natural Pork of their dissociation from the limited liability partnership prior to the Petition Date, as identified in the table below:

| | Name | Units | | | Name | Units |
|---|---|---|---|---|---|---|
| | | | | 20 | Craton Capital GP, LLC | 194.32 |
| 1 | AgriCulture, Inc. | 27.22 | | 21 | Deren, Christopher | 7.28 |
| 2 | Amrozowicz, Rich | 36.26 | | 22 | Deren, Patrick | 2.86 |
| 3 | Anliker, Michael | 0.85 | | 23 | Donlin, Sean | 20.20 |
| 4 | Beach, Ron & Mona Jones | 8.78 | | 24 | Ewing, Richard | 160.00 |
| 5 | Beach, Ron & Mona Jones | 18.81 | | 25 | FNBO (Gary Weihs) | 217.10 |
| 6 | Beach, Ron (LT) | 20.98 | | 26 | Gardner,Cyrus | 24.72 |
| 7 | Betts, Robert (RBC) | 3.79 | | 27 | Gearhart, Michael | 4.57 |
| 8 | Blair, Kelly (pers) | 4.66 | | 28 | Gimbel, Ronald | 4.28 |
| 9 | Block, David | 48.76 | | 29 | Gimbel, Steven | 4.28 |
| 10 | Blomme, Bob (RBC) | 3.89 | | 30 | Gingerich, Maynard & Carol | 6.58 |
| 11 | Booth, Robert | 2.20 | | 31 | Goedken, Wayne | 3.89 |
| 12 | Booth, Robert & Connie | 10.70 | | 32 | Gordon, Deb | 0.19 |
| 13 | Booth, Connie (RBC) | 2.27 | | 33 | Gordon, Todd | 0.10 |
| 14 | Bradley, John | 8.54 | | 34 | Greer, Dennis | 3.27 |
| 15 | Burge, Wendell (pers) | 17.77 | | 35 | Haupts, William | 1.69 |
| 16 | Burge, Gary & Jackie Rev Trust | 36.19 | | 36 | Hemminger, Dale (LT) | 2.08 |
| 17 | Burgoyne Roberts Trust | 18.83 | | 37 | Hoegh, Donna | 8.52 |
| 18 | Carpenter Family Trust | 3.30 | | 38 | Hoegh, Winston | 5.11 |
| 19 | Clemens, Jon & Suzanne | 0.58 | | 39 | Hofmeister, Douglas & Nancy | 3.58 |

7

| | | | | | | |
|---|---|---|---|---|---|---|
| 40 | Hofmeister , Nancy (pers) | 3.54 | | 83 | Rees, Tyler | 2.56 |
| 41 | Howland, Amanda (LT) | 0.40 | | 84 | Rees, Ryan (LT) | 1.41 |
| 42 | Howland, Amanda (LT) | 0.30 | | 85 | Reinig, Ed | 17.11 |
| 43 | Koesters, Kara | 1.69 | | 86 | Reinig, Elizabeth Jo Rev. Trust | 3.38 |
| 44 | Koesters, Luke F. | 1.56 | | 87 | Roberts, Brad (RBC) | 7.09 |
| 45 | Koesters, Debbie Lee (RBC) | 1.81 | | 88 | Ruppert, William & Eleanora | 7.83 |
| 46 | Kruse Investment Co. | 164.26 | | 89 | Ruppert Jr., William (pers) | 12.76 |
| 47 | Lane, Eli, Philip & Richard | 1.11 | | 90 | Russell, Maurice & Mardene | 9.09 |
| 48 | Lane, Jonathan | 0.06 | | 91 | Salzinger, Steve | 21.06 |
| 49 | Lane, Harriet (pers) | 5.56 | | 92 | Schaben, Gary & Jackie | 1.81 |
| 50 | Lane, Philip (pers) | 12.97 | | 93 | Schmitz, Steve | 146.59 |
| 51 | Lane Asset Management | 84.24 | | 94 | Schomers, Don | 4.27 |
| 52 | Lane, Jessica from Eli Lane | 4.12 | | 95 | Schulte, Charles | 6.65 |
| 53 | Lane, Jonathan from Eli Lane | 4.11 | | 96 | Schulte, Karen | 4.08 |
| 54 | Lane, Harriet (Trust) | 17.88 | | 97 | Schulte, Karen (pers) | 6.00 |
| 55 | Lane, Richard (Trust) | 9.50 | | 98 | Seivers, Kent & Judy | 22.03 |
| 56 | Lane, Philip (Defined Benefit) | 23.09 | | 99 | Sorensen, Jerry (RBC) | 5.78 |
| 57 | Lane, Philip (Money Purch Plan) | 19.62 | | 100 | Staiert, Walter & Laurie | 11.15 |
| 58 | Larson, Dennis | 15.58 | | 101 | Stava, Ron & Grace | 4.81 |
| 59 | Leinen, Scott & Dena | 4.25 | | 102 | Stewart, Diane | 0.20 |
| 60 | Ludwig, Thomas & Nancy | 4.65 | | 103 | Svendsen, Elliott & Ardis | 1.13 |
| 61 | Maday, Thomas & Jean | 12.36 | | 104 | Svendsen, Douglas (RBC) | 2.32 |
| 62 | Manatt, Chuck | 21.89 | | 105 | Teggatz, Curt | 3.14 |
| 63 | Markham, Philip | 6.27 | | 106 | VanBaale, LLC | 6.48 |
| 64 | McManaman, Betty | 2.21 | | 107 | Vincent, Thomas | 3.45 |
| 65 | Merkle, Brian & Peggy | 1.50 | | 108 | Walsh, Patrick & Shelia | 6.53 |
| 66 | Moss, Robert | 3.40 | | 109 | Walsh, Patrick | 4.36 |
| 67 | Motsick, Rick | 0.54 | | 110 | Weihs, David | 1.07 |
| 68 | Motsick, Lorrie (RBC) | 0.54 | | 111 | Weihs, John | 16.44 |
| 69 | Murtaugh, Tom & Jill | 0.68 | | 112 | Weihs, Ron | 6.24 |
| 70 | Nichols, William | 3.51 | | 113 | Weihs, Karen (Roth IRA) | 5.38 |
| 71 | Nickel, Inc. | 7.23 | | 114 | Weihs, Karen (RBC) | 15.62 |
| 72 | Noble, James | 4.26 | | 115 | Weihs, Karen Revocable Trust | 16.44 |
| 73 | O'Connor, Brian & Jennifer | 4.16 | | 116 | Wellmark BCBS | 13.74 |
| 74 | Oestreicher, Jody (LT) | 6.20 | | 117 | Westphalen, Casey (LT) | 0.65 |
| 75 | Penney, Robert C. | 7.58 | | 118 | Westphalen, Michael (SEP) (RBC) | 1.04 |
| 76 | Petsche, Joe & Laura | 1.62 | | 119 | Willis, Dean & Robin | 12.47 |
| 77 | Pond, Preston | 5.75 | | 120 | Woodruff, Michelle | 12.09 |
| 78 | Pond, Preston | 49.19 | | 121 | Zaccone, Mark | 64.11 |
| 79 | Pond, Vicki | 0.37 | | 122 | Zaccone Investments | 66.58 |
| 80 | QRS Investments | 9.35 | | | | |
| 81 | Rees, Gary & Michelle | 32.86 | | | Total | 2065.90 |
| 82 | Rees, Ryan | 0.19 | | | | |

<u>Distribution or Dividend</u>:  The property required by the Joint Plan to be distributed to the holders of Allowed Claims and Interests.

<u>Effective Date</u>:  The first Business Day which is ten (10) days after the Confirmation Date.

<u>Equity Interests Fund:</u>  The segregated deposit account maintained by the Reorganized Debtor containing proceeds of property of the bankruptcy estates liquidated pursuant to the Joint Plan, but not including the proceeds of any property which was owned by or subject to a security interest of any third party.

<u>Final Order</u>:  An order or a judgment of a court which has not been reversed, stayed, modified or amended, and as to which (a) the time to appeal or to seek review by certiorari or rehearing has expired, and no such appeal, review, certiorari or rehearing petition has been filed, or (b) any such appeal, review, certiorari or rehearing proceeding has been finally determined or dismissed, and the order or judgment is conclusive of all matters adjudicated thereby and in full force and effect.

<u>ICC</u>:  The Inter Creditor Committee created by the SIA to represent the Interests of the SIA Parties, and whose members are Richard Ewing, Tom Jensen on behalf of First National Bank of Omaha, Ejnar Knudsen on behalf of Kruse Investment Company, Richard Lane, and Raju Shah on behalf of Craton Capital.

<u>Impaired</u>:  Means the legal, equitable and contract rights of Claim holders are altered under the Joint Plan.

<u>Insider:</u>    A person as defined by Bankruptcy Code Section 101(31).

<u>Interest</u>:  Equity in the Debtors arising pursuant to the ownership or right to acquire ownership or other equity interests of the Debtors.

January 2012 Distribution:  The disbursement of approximately $10,509,341.36 in Cash

to certain of the SIA Parties on or about January 27, 2012 as identified on the table below:

| Last | First | 1/2012 Distribution |
|---|---|---|
| Agriculture, Inc. | | $130,817.67 |
| Amrozowicz | Rich | $173,802.83 |
| Anlicker | Michael (RBC) | $4,092.31 |
| Beach | Ron & Mona Jones | $90,377.99 |
| Beach | Ron | $100,839.65 |
| Betts | Robert (RBC) | $17,354.95 |
| Blair | Kelly | $22,348.37 |
| Block | David | $235,487.12 |
| Blomme | Bob (RBC) | $17,177.90 |
| Booth | Connie (RBC) | $10,940.77 |
| Booth | Robert (RBC) | $10,646.13 |
| Booth | Robert & Connie | $51,696.07 |
| Bradley | John | $41,062.46 |
| Burge | Wendell | $79,207.19 |
| Burgoyne Roberts Trust | | $91,101.07 |
| Carpenter Family Trust | | $15,997.61 |
| Clemens | Jon & Suzanne | $2,802.18 |
| Craton Capital GP, LLC | | $944,466.75 |
| Deren | Christopher | $34,861.69 |
| Deren | Patrick (RBC) | $13,804.27 |
| Donlin | Sean | $96,974.99 |
| Eli, Philip & Richard Lane Trust | | $5,390.06 |
| Elizabeth Jo Reinig Rev. Trust | | $16,222.23 |
| Ewing | Richard | $773,635.72 |
| First National Bank of Omaha (Diane Weihs) | | $144,237.63 |
| First National Bank of Omaha (Gary Weihs) | | $974,213.20 |
| Gardner | Cyrus & Christina | $118,840.25 |
| Gary Burge Revocable Trust | | $173,920.14 |
| Gearhart | Michael | $22,013.34 |
| Gimbel | Ronald | $20,523.87 |
| Gimbel | Steven | $20,523.73 |
| Gingerich | Maynard & Carol | $29,494.23 |
| Goedken | Wayne (RBC) | $39,525.34 |
| Goedken | Wayne | $17,513.90 |
| Gordon | Deb | $917.72 |
| Gordon | Todd | $489.06 |
| Greer | Dennis | $15,873.75 |
| Harriet Lane Trust | | $86,811.09 |
| Haupts | William (RBC) | $8,130.33 |
| Hemminger | Dale | $10,070.37 |
| Hoegh | Donna | $40,842.35 |
| Hoegh | Winston | $24,505.69 |
| Hofmeister | Douglas | $17,195.47 |
| Hofmeister | Nancy (per) | $15,991.51 |
| Howland | Amanda | $1,963.83 |
| Howland | Amanda | $1,474.66 |
| Jessica Lane from Eli Lane | | $20,015.15 |
| Karen Weihs Revocable Trust | | $73,708.43 |
| Koesters | Kara | $8,120.26 |
| Koesters | Debbie Lee (RBC) | $8,756.79 |
| Koesters | Luke F. (RBC) | $7,547.29 |
| Kruse Investment Co. | | $798,352.26 |
| Lane | Harriet | $26,976.11 |
| Lane | Jonathan | $293.45 |
| Jonathan Lane from Eli Lane | | $19,966.43 |
| Lane | Philip (Fr. Eli) | $248,199.64 |
| Lane | Philip (pers) | $62,970.32 |
| Philip Lane Money Purchase Plan | | $95,257.74 |
| Lane | | $248,199.64 |
| Lane Asset Management | | $409,084.40 |
| Larson | Dennis | $75,374.79 |
| Leinen | Scott & Dena | $20,680.30 |
| Ludwig | Thomas & Nancy | $22,342.65 |
| Maday | Thomas & Jean | $59,414.25 |
| Manatt | Chuck | $105,162.78 |
| Markham | Philip | $30,086.62 |
| McManaman | Betty | $10,603.78 |
| Merkle | Brian & Peggy | $6,659.23 |
| Moss | Robert | $16,324.46 |
| Motsick | Lorrie (RBC) | $2,415.58 |
| Motsick | Rick (RBC) | $2,415.58 |

| | | | | | | |
|---|---|---|---|---|---|---|
| Murtaugh | Tom & Jill | $3,255.92 | | Schulte | Charles | $31,914.08 |
| Nichols | William (RBC) | $16,959.41 | | Schulte | Karen (LT) | $28,975.46 |
| Nickel, Inc. | | $32,792.07 | | Schulte | Karen (per) | $19,719.20 |
| Noble | James | $20,348.70 | | Seivers | Kent & Judy | $105,870.85 |
| O'Connor | Brian & Jennifer | $20,007.81 | | Sorensen | Jerry (RBC) | $25,646.24 |
| Oestreicher | Jody | $30,108.30 | | Staiert | Walter & Laurie | $53,615.92 |
| Penney | Robert C. | $34,392.81 | | Stava | Ron & Grace | $21,646.70 |
| Petsche | Joe & Laura | $7,763.64 | | Svendsen | Elliott & Ardis | $5,443.07 |
| Philip Lane Defined Benefit | | $112,123.34 | | Svendsen | Doug (RBC) | $11,155.31 |
| Pond | Preston | $237,843.44 | | Teggatz | Curt | $15,073.88 |
| Pond | Preston (RBC) | $27,788.77 | | VanBaale, LLC | | $31,492.19 |
| Pond | Vicki (RBC) | $1,806.84 | | Vincent | Thomas (RBC) | $16,579.74 |
| QRS Investment | | $44,881.79 | | Walsh | Patrick & Sheila | $31,560.35 |
| Rees | Gary & Michelle | $157,926.12 | | Walsh | Patrick (RBC) | $21,063.58 |
| Rees | Ryan | $6,762.26 | | Weihs | David | $4,811.33 |
| Rees | Ryan | $896.47 | | Weihs | John | $79,432.19 |
| Rees | Tyler | $12,353.31 | | Weihs | Karen (RBC) | $75,414.87 |
| Reinig | Ed | $82,220.19 | | Weihs | Karen (ROTH) | $25,992.87 |
| Richard Lane Trust | | $45,893.50 | | Weihs | Ron | $29,986.52 |
| Roberts | Brad (RBC) | $34,285.94 | | Wellmark, BCBS | | $65,769.95 |
| Ruppert | William & Eleanora | $37,632.86 | | Westphalen | Casey | $3,125.25 |
| Ruppert, Jr. | William | $61,311.30 | | Westphalen | Michael (RBC) | $5,005.44 |
| Russell | Maurice & Mardene | $43,648.36 | | Willis | Dean & Robin | $59,916.92 |
| Salzinger | Steve | $102,231.78 | | Woodruff | Michelle | $58,112.69 |
| Schaben | Gary & Jackie | $8,784.26 | | Zaccone | Mark | $308,092.44 |
| Schmitz | Steve | $704,353.91 | | Zaccone Invest. | | $319,686.04 |
| Schomers | Don | $20,757.81 | | | | |

    Joint Plan:  The Debtors' Joint Liquidating Plan of Reorganization dated January 21, 2014, either in its present form or as it may be altered, amended or modified from time to time.

    Natural Pork Case:  The voluntary Chapter 11 case filed by Natural Pork Production II, LLP on September 11, 2012, in the U.S. Bankruptcy Court for the Southern District of Iowa and assigned Case No. 12-02872-als11.

    North Harlan Case: The voluntary Chapter 11 case filed by North Harlan, LLC on December 7, 2012, in the U.S. Bankruptcy Court for the Southern District of Iowa and assigned Case No. 12-03750-als11.

<u>Official Committee</u>:  The official committees of unsecured creditors appointed by the United States Trustee in the Natural Pork Case on September 26, 2012 (Docket Item 77), in the Crawfordsville Case on December 17, 2012 (Docket Item 18), in the Brayton Case on December 17, 2012 (Docket Item 14), in the South Harlan Case on December 17, 2012 (Docket Item 14), and in the North Harlan Case on December 17, 2012 (Docket Item 18), pursuant to Bankruptcy Code Section 1102(a) and serving in the Bankruptcy Cases.

<u>Person</u>:  An individual, corporation or partnership, as defined in Bankruptcy Code Section 101(41).

<u>Petition Date</u>:  September 11, 2012, for Natural Pork Production II, LLP, and December 7, 2012, for Crawfordsville, LLC, Brayton, LLC, North Harlan, LLC and South Harlan, LLC, the date the Debtors filed their respective voluntary petitions for relief, commencing the Bankruptcy Cases.

<u>Priority Tax Claim</u>:  Any Claim entitled to priority and payment under Bankruptcy Code Section 507(a)(8).

<u>Professional Person</u>:  Any attorney, accountant, or other professional: (i) engaged by the Debtor or any committee and approved by order of the Bankruptcy Court in the Bankruptcy Case; or (ii) engaged by the Reorganized Debtor after the Effective Date.

<u>Pro Rata</u>:  Proportionately, so that the ratio of the amount of a particular Claim or Interest to the total amount of Allowed Claims or Interests of the Class in which a particular Claim or Interest is included, is the same as the ratio of the amount of consideration distributed on account of such particular Claim or Interest to the consideration distributed on account of the Allowed Claims or Interests of the Class as a whole in which the particular Claim or Interest is included.

<u>Reorganized Debtor</u>:  Natural Pork after the Confirmation Date.

Secured Claim:  A Claim to the extent such Claim is secured as defined in Bankruptcy Code Section 506.

Secured Creditor:  Any Creditor that is the holder of a Secured Claim, to the extent of such Claim.

SIA:  The Settlement and Inter Creditor Agreement executed by Natural Pork, Craton Capital, LLP, and Kruse Investments, along with the SIA parties and dated November 30, 2011.

SIA Parties:  The signatories to the SIA.

South Harlan Case:  The voluntary Chapter 11 case filed by South Harlan, LLC on December 7, 2012, in the U.S. Bankruptcy Court for the Southern District of Iowa and assigned Case No. 12-03751-als11.

Sub Debt Notes:  The subordinated promissory notes executed by Natural Pork in favor of Current Equity and Dissociated Equity and issued in connection with subscription in the limited liability partnership.

Unimpaired:  Means the legal, equitable and contractual rights of Claim or Interest holders are unaltered under the Joint Plan.

Unsecured Claim:  Any Claim other than an Administrative Expense, a Priority Tax Claim, a Priority Non-Tax Claim, or a Secured Claim, and all Claims of Secured Creditors whose Claims are valued as unsecured pursuant to Bankruptcy Code Section 506(a).

Unsecured Creditor:  Any Creditor holding an Unsecured Claim.

The words "herein" and "hereunder" and other words of similar import refer to this Joint Plan as a whole and not to any particular section, subsection or clause contained in this Joint Plan, unless the context requires otherwise.  Whenever from the context it appears appropriate, each term stated in either the singular or the plural includes the singular and the plural, and

pronouns stated in the masculine, feminine or neuter gender include the masculine, feminine and

the neuter.  The section headings contained in the Joint Plan are for reference purposes only and

shall not affect in any way the meaning or interpretation of the Plan.

A term used in this Joint Plan and not defined herein, but that is defined in the

Bankruptcy Code, has the meaning assigned to the term in the Bankruptcy Code.  A term used in

this Joint Plan and not defined herein or in the Bankruptcy Code, but which is defined in the

Bankruptcy Rules, has the meaning assigned to the term in the Bankruptcy Rules.

## ARTICLE II - DESIGNATION AND TREATMENT OF UNCLASSIFIED CLAIMS

A.          <u>Designation</u>.  Unclassified Claims consist of the following:

1.          Administrative Expense Claims:  allowed Administrative Expense Claims

as defined above;

2.          Priority Tax Claims:  Allowed Claims entitled to priority pursuant to

Bankruptcy Code Section 507(a)(8).

B.          <u>Treatment</u>.

1.          <u>Administrative Expense Claims</u>.  Except to the extent that the holder has

agreed to different and/or less favorable treatment of such Claim, each holder of an Allowed

Administrative Expense Claim shall be paid in Cash the allowed amount of such Claim at the

later of the Effective Date or the entry of a Final Order approving such Claim; provided,

however, that Administrative Expense Claims that represent expenses, debts, or liabilities

incurred by the Debtors in the ordinary course of business from and after the Petition Date shall

be assumed and paid in the order and course of the administration of the Debtors' affairs in

accordance with the terms and conditions of any agreements relating thereto.

14

2.     <u>Priority Tax Claims.</u>  Except to the extent that the holder of a particular Priority Tax Claim has agreed to different and/or less favorable treatment of its Claim, and after the payment in full of all Allowed Claims entitled to payment pursuant Bankruptcy Code Sections 507(a)(1) through (7), inclusive, holders of Priority Tax Claims shall be paid in Cash the allowed amount of such Claim on the later of the Effective Date or the entry of a Final Order approving such Claim to satisfy all such Priority Tax Claims in full.  The table below shows all Priority Tax Claims and their proposed Distribution:

| | | | |
|---|---|---|---|
| Archer City Independent School District | Windthorst Property Taxes | Allowed | $3,490.51 |
| Archer County | Windthorst Property Taxes | Allowed | $1,789.82 |
| Nebraska Department of Revenue | Tax Year 2011 Partnership Taxes | Contested Claim | $29,123.55 |
| | | **Total** | $34,403.88 |

## ARTICLE III – CLASSIFICATION AND TREATMENT OF IMPAIRED AND UNIMPAIRED CLASSES AND INTERESTS

Classes 1, 2, 3, 4, 5, 7, and 8 are Unimpaired under the Joint Plan.  Classes 6, 9, 10, 11, 12, 13, 14, and 15 are Impaired under the Joint Plan.

The following is a description of all Classes of Claims and Interests other than the Unclassified Claims, and their treatment under the Joint Plan.

A.     *Class 1 – Allowed Priority Non-Tax Claims*

1.     Classification.  Class 1 consists of Allowed Priority Non-Tax Claims accrued and owing as of the Petition Date and entitled to priority pursuant to Bankruptcy Code Sections 507(a)(1), (a)(4), (a)(5), (a)(6) or (a)(7).  The Debtors are informed and believe that there are no Class 1 Claims.  Class 1 is Unimpaired and is not entitled to vote.

2.       Treatment.  To the extent there is an Allowed Priority Non-Tax Claim, and except to the extent that such holder has agreed to different and/or less favorable treatment of such Claim, each holder of an Allowed Class 1 Claim shall be paid in Cash the allowed amount of such Claim on the Effective Date or the entry of a Final Order approving such Claim.

B.       *Class 2 – Allowed Secured Claim of AgStar*

1.       Classification.  Class 2 consists of the Allowed Secured Claim of AgStar Financial Services, FLCA ("AgStar").  AgStar filed Proof of Claim No. 6-1 on December 21, 2012, and Amended Proof of Claim No. 6-2 on April 5, 2013, both for $3,819,891.08.  The Class 2 Claim is Allowed against both the Natural Pork and Crawfordsville bankruptcy estates.  The Debtors do not dispute the Class 2 Claim. The Class 2 Claim is Unimpaired and is not entitled to vote.

2.       Treatment.  The Class 2 Claim was paid in full post-petition pursuant to Final Orders of the Court entered in connection with the Debtors' auction sales of the Crawfordsville and Colfax properties.  The Class 2 Claim shall not receive any further Distribution under the Joint Plan.

C.       *Class 3 - Allowed Secured Claim of First Farmers*

1.       Classification.  Class 3 consists of the Allowed Secured Claim of First Farmers Bank & Trust ("First Farmers").  First Farmers filed Proof of Claim No. 29-1 on January 7, 2013, and Amended Proof of Claim No. 29-2 on April 4, 2013, both for $1,855,884.94.  The Class 3 Claim is Allowed against both the Natural Pork and Crawfordsville bankruptcy estates.  The Debtors do not dispute the Class 3 Claim. The Class 3 Claim is Unimpaired and is not entitled to vote.

2.    <u>Treatment</u>.  The Class 3 Claim was paid in full post-petition pursuant to Final Orders of the Court entered in connection with the Debtors' auction sales of the Crawfordsville and Colfax properties.  The Class 3 Claim shall not receive any further Distribution under the Joint Plan.

D.    *Class 4 – Allowed Secured Claim of GE*

1.    <u>Classification</u>.  Class 4 consists of the Allowed Secured Claim of GE Commercial Finance Business Corporation f/k/a General Electric Capital Business Asset Funding Corporation ("GE").  GE did not file any Proof of Claim.  Natural Pork and Brayton both scheduled GE as a Secured Creditor for $1,631,470.50 with valid and binding security interests in assets of both Natural Pork and Brayton.  The Class 4 Claim is Allowed against both the Natural Pork and Brayton bankruptcy estates.  The Debtors do not dispute the Class 4 Claim. The Class 4 Claim is Unimpaired.

2.    <u>Treatment</u>.  The Class 4 Claim was paid in full post-petition in the ordinary course of business pursuant to an Early Buyout Option.  The Class 4 Claim shall not receive any further Distribution under the Joint Plan.

E.    *Class 5 – Allowed Secured Claim of Met Life*

1.    <u>Classification</u>.  Class 5 consists of the Allowed Secured Claim of Metropolitan Life Insurance Company ("Met Life").  Met Life did not file any Proof of Claim. Natural Pork, North Harlan and South Harlan all scheduled Met Life as a Secured Creditor for $275,954.90 with valid and binding security interests in assets of Natural Pork, North Harlan and South Harlan. The Class 5 Claim is Allowed against the Natural Pork, North Harlan and South Harlan bankruptcy estates.  The Debtors do not dispute the Class 5 Claim. The Class 5 Claim is Unimpaired.

2.     _Treatment_**.**  The Class 5 Claim was paid in full post-petition pursuant to a Final Order of the Court entered in connection with the sale of the North Harlan property.  The Class 5 Claim shall not receive any further Distribution under the Joint Plan.

F.     _Class 6 – Contested Secured Claims of ICC/SIA Parties_**.**

The Claims in Class 6 are contested by the Debtors.  The constituency of Class 6 includes those individuals and entities who dissociated from the Natural Pork limited liability partnership prior to the Petition Date, were SIA Parties, and received a part of the January 2012 Distribution. The Class 6 claimants assert that their individual and collective Claims arise from the value of their Dissociated Equity Interests on the date of their dissociation from the Natural Pork limited liability partnership, plus interest from the date of each respective Notice of Dissociation through the Petition Date, and spring from the SIA.  Each individual Class 6 claimant's Claim is ostensibly evidenced by a promissory note issued to each claimant pursuant to the SIA and in consideration for being an SIA Party.  The Class 6 claimants also assert that their Class 6 Claims are individually and collectively secured by a junior security interest, lien and encumbrance upon all of the assets of all five (5) bankruptcy estates. Each individual Class 6 claimant has filed a Proof of Claim, and the ICC, ostensibly acting on behalf of all SIA Parties, has also filed an omnibus Proof of Claim for all the SIA parties in all five (5) Bankruptcy Cases.

The Debtors have disputed all the individual Class 6 Proofs of Claim, and the ICC omnibus Proof of Claim on behalf of all the SIA Parties, in the Adversary Proceedings, and by filing objections to all the Class 6 Proofs of Claim.  Therefore, all Class 6 Claims are Contested Claims.

A brief and non-exclusive summary of the Debtors' dispute and objection of the Class 6 Claims are detailed in the Adversary Proceedings, and summarized below:

(a)  The SIA was executed without prior, proper or adequate notice to Natural Pork's Current Equity Interests and without the required vote of the Natural Pork Current Equity Interest holders under the Natural Pork Partnership Agreement.

(b)  The SIA contains certain material terms and conditions that violate the Natural Pork Partnership Agreement, the Natural Pork Buy-Sell Agreement, and Iowa Code Chapter 486A, because the SIA delegates control over management decisions of Natural Pork to persons or entities that are not Current Equity Interest Holders.

(c)  The SIA contains material terms and conditions that violate the Natural Pork Partnership Agreement, the Natural Pork Buy-Sell Agreement, and the Iowa Code Chapter 486A, by improperly reordering the priority of debt repayment between Sub Debt Note holders and Dissociated Equity Interest holders.

(d)  The SIA was a creation borne of fraud, breach of fiduciary duty and improper self dealing by Natural Pork's then managing partners.

(e)  The alleged junior security interests, liens and encumbrances on all of the property of all five (5) Debtors, granted to the SIA Parties, through the SIA, were all fraudulent conveyances and avoidable transfers under both the Bankruptcy Code, Iowa law and applicable case law.

(f)  To the extent the Claims of Class 6 claimants are Allowed Claims, such Claims are subject to equitable subordination pursuant to Bankruptcy Code Section 510, and should be treated as Interests rather than Claims.

Based on the above, all Class 6 Claims shall be disallowed and shall not receive any Distribution on account of their Class 6 Claims.  Dissociated Equity Interests shall be treated as Interests, and not Claims, in Class 14.

Class 6 is Impaired.

G.        *Class 7 – Allowed Secured and Unsecured Claims on Executory Contracts and Unexpired Leases*

1.        Classification.  Class 7 consists of all Allowed Secured and Unsecured Pre-Petition Executory Contract and Unexpired Lease Claims against all five (5) bankruptcy estates. The Debtors are informed and believe that there are no Class 7 Claims. Class 7 is Unimpaired.

2.        Treatment.  To the extent there are any Allowed Secured and/or Unsecured Pre-Petition Executory Contract and/or Unexpired Lease Claims against any of the five (5) bankruptcy estates, and except to the extent that such a holder has agreed to different and/or less favorable treatment of such Claim, each holder of an Allowed Class 7 Claim shall be paid in full in Cash the allowed amount of such Claim on the Effective Date or the entry of a Final Order approving such Claim.

H.        *Class 8 – Allowed General Unsecured Claims*

1.        Classification.  Class 8 consists of Allowed General Unsecured Claims that the Debtors incurred pre-petition in the ordinary course of their respective businesses.  The vast majority of the Class 8 Claims are described as "Trade Claims" and were incurred by Crawfordsville and Natural Pork in its Colfax operations. Class 8 also includes the Claims of Trupointe Cooperative and Purina Mills, LLC in connection with Natural Pork's earlier investment in the YNOT property and Gary Weihs for development fees. There are 34 Claims in this Class, and the total amount of Allowed Claims is $4,171,556.96.  Class 8 is Unimpaired.

2.        Treatment.  Unless the holder of an Allowed Class 8 Claim has agreed to different and/or less favorable treatment of such Claim, each holder of an Allowed Class 8 Claim shall be paid in full in Cash the allowed amount of such Claim on the Effective Date or the entry

of a Final Order approving such Claim, plus interest at Three Percent (3.0%) per annum,

calculated from the Petition Date to the Effective Date. Below is a table of all Class 8 Claim

holders and the proposed Distribution on each Claim:

|    | Name | ClaimAmt | Consideration |
|----|------|----------|---------------|
| 1 | AMVC Employee Services | $240.81 | Trade Debt |
| 2 | AMVC Management Services | $216.00 | Trade Debt |
| 3 | AT&T | $299.66 | Trade Debt |
| 4 | B&K Smith Trucking, Inc. | $1,824.60 | Trade Debt |
| 5 | Berend Turf & Tractor | $1,735.15 | Trade Debt |
| 6 | Ceres Solutions | $0.00 | Trade Debt |
| 7 | Cottrell, Zakk | $42.97 | Trade Debt |
| 8 | Darlington Municipal Utilities | $652.29 | Trade Debt |
| 9 | Davis Mike | $101.50 | Trade Debt |
| 10 | Duke Energy | $3,523.19 | Trade Debt |
| 11 | Farmers Mutual Coop Telephone | $6.06 | Trade Debt |
| 12 | First Bankcard | $4,154.00 | Trade Debt |
| 13 | Hog Slat, Inc. | $601.62 | Trade Debt |
| 14 | Hog Slat, Inc. | $645.68 | Trade Debt |
| 15 | Indiana State Dept. of Agriculture | $10.00 | Trade Debt |
| 16 | John Wilcox Excavating | $17,466.20 | Trade Debt |
| 17 | Land O Lakes | $8,291.11 | Trade Debt |
| 18 | McCord Electrical | $6,808.82 | Trade Debt |
| 19 | PIC | $29,171.10 | Trade Debt |
| 20 | Pomp's Tire Service, Inc. | $311.18 | Trade Debt |
| 21 | Premier Feeds, LLC | $220.00 | Trade Debt |
| 22 | Purina Mills, LLC | $2,009,868.81 | YNOT Note |
| 23 | Quench USA (Aquaperfect) | $48.15 | Trade Debt |
| 24 | Sprint | $419.49 | Trade Debt |
| 25 | Swine Health Services, LLC | $90.61 | Trade Debt |
| 26 | Thrifty Wholesale Supply, Inc. | $127.64 | Trade Debt |
| 27 | Trupointe Cooperative, Inc. | $1,936,582.95 | YNOT Note |
| 28 | U Rent It Center, Inc. | $390.51 | Trade Debt |
| 29 | Verizon Wireless | $138.02 | Trade Debt |
| 30 | Waste Management of Central Indiana | $429.30 | Trade Debt |
| 31 | Waste Management of Central Indiana | $150.46 | Trade Debt |
| 32 | Weihs, Gary | $146,581.87 | Development fee |
| 33 | Whitewater Valley REMC | $132.81 | Trade Debt |

| 34 | Wright Hardware | | $274.40 | Trade Debt |

Total    $4,171,556.96

I.    *Class 9 – Allowed Subordinated Unsecured Claims (No January 2012 Distribution)*

1.    Classification.  Class 9 consists of Allowed Unsecured Claims of Subordinated Note Holders ("Sub Debt Notes") held by Natural Pork's Current and Dissociated Limited Liability Partners on the Petition Date who did not receive any payment or Dividend from the January 2012 Distribution. The Sub Debt Notes were issued to Current and Dissociated Equity and in connection with their subscription as Limited Liability Partners of Natural Pork and their equity investment in same.  The Sub Debt Notes were also issued to certain parties who did not make an equity investment.  There are 42 Class 9 Claim holders and the total amount of Allowed Claims is $9,596,620.63.  Class 9 is Impaired.

2.    Treatment.  Unless the holder of an Allowed Class 9 Claim has agreed to different and/or less favorable treatment of such Claim, each holder of an Allowed Class 9 Claim shall be paid in full in Cash the allowed amount of such Claim on the Effective Date or the entry of a Final Order approving such Claim, plus interest at Three Percent (3.0%) per annum, calculated from the Petition Date to the Effective Date. Below is a table of all Class 9 Claim holders and the proposed Distribution on each Claim:

| | Last Name | First Name | Acct No | Claim Amount |
|---|---|---|---|---|
| 1 | Axelrod | Alan | 260169.0 | $464,830.58 |
| 2 | Axelrod | Arbie | 260129.0 | $326,871.51 |
| 3 | Bloomquist | Cynthia Gove | 260048.0 | $48,347.43 |
| 4 | Bolander | Frederick WW | 260087.0 | $1,310,915.29 |
| 5 | Bolander | Frederick/Rinske | 260068.0 | $1,312,973.54 |
| 6 | Burge | Wendell IRA (LT) | 260109.0 | $52.98 |
| 7 | Cass | Joseph & Amy | 260111.0 | $146,722.64 |
| 8 | Christofferson | Paul & Susan | 260024.0 | $24,168.84 |

| 9 | Croghan | Peter & Lois | 260095.0 | $18,313.75 |
|---|---|---|---|---|
| 10 | D & G Farms | | 260002.0 | $69,426.22 |
| 11 | D & G Farms | | 260175.0 | $69,504.54 |
| 12 | Dinsdale | Joy | 260063.0 | $94,761.10 |
| 13 | Finken | Bob | 260090.0 | $11,618.42 |
| 14 | Ford | Michael (RBC) | 260099.0 | $12,905.23 |
| 15 | Gray | Randy | 260133.0 | $2,207.32 |
| 16 | Handlos | Lawrence & Doris | 260092.0 | $4,140,372.43 |
| 17 | Handlos | Pat (RBC) | 260100.0 | $19,293.94 |
| 18 | Juckem | Jay & Denise | 260098.0 | $54,478.56 |
| 19 | Lane | Philip IRA (LT) | 260086.0 | $142,270.20 |
| 20 | Lane | Jessica | 260136.0 | $18,479.98 |
| 21 | Lapke | Gerald Rev Trust | 260127.0 | $204,294.69 |
| 22 | Lapke | JoAnn Rev Trust | 260126.0 | $204,294.69 |
| 23 | Lorack | Tim | 260016.0 | $69,065.36 |
| 24 | Lorack | Tim (RBC) | 260094.0 | $9,785.26 |
| 25 | Lorack | Todd | 260015.0 | $64,270.03 |
| 26 | Lorack | Todd (RBC) | 260049.0 | $21,660.84 |
| 27 | Neitzel | Charles | 260161.0 | $44,251.17 |
| 28 | Nyman | Mark & Shari | 260152.0 | $1,473.28 |
| 29 | Oestreicher | Jill | 260103.0 | $98,061.45 |
| 30 | Pond | Preston (Interagtive) | 260166.0 | $9,070.66 |
| 31 | R II B Family, LLC | | 260067.0 | $46,679.59 |
| 32 | Schliesman | Thomas | 260128.0 | $102,427.62 |
| 33 | Schwartz | Gail | 260119.0 | $12,117.17 |
| 34 | Stewart | Diane | 260033.0 | $1,660.84 |
| 35 | Stewart | Diane | 260123.0 | $4,337.50 |
| 36 | Stewart | Paul | 260124.0 | $886.34 |
| 37 | Thorbeck | David | 260050.0 | $48,332.62 |
| 38 | Wigley | Michael | 260051.0 | $46,370.19 |
| 39 | Wittrup | Richard Trust | 260047.0 | $36,317.00 |
| 40 | Wood | Mark & Nancy | 260036.0 | $101,342.54 |
| 41 | Zaccone | Joe | 260006.0 | $17,634.14 |
| 42 | Zaccone | Martin & Mary Jane | 260102.0 | $163,773.15 |
| | | Total | | $9,596,620.63 |

J.        *Class 10 – Allowed Subordinated Unsecured Claims (Received January
2012 Distribution in an amount less than Sub Debt Note Claim)*

1.        Classification**.** Class 10 consists of the Allowed Unsecured Claims of Sub

Debt Note holders who did receive a payment from the January 2012 Distribution, but such

payment was less than their Sub Debt Note Claim as of the Petition Date.

There are 92 Allowed Claims in Class 10 who were collectively owed $10,342,226,78 on

their Sub Debt Note Claims as of the Petition Date, collectively received $5,838,619.80 from the

January 2012 Distribution, and will collectively receive $4,503,606.98 on account of their Class

10 Claim under the Joint Plan.  Class 10 is Impaired.

2.        Treatment**.** Unless the holder of an Allowed Class 10 Claim has agreed to

different and/or less favorable treatment of such Claim, each holder of an Allowed Class 10

Claim shall be paid in full in Cash the allowed amount of such Claim on the Effective Date or

the entry of a Final Order approving such Claim, without interest, provided, however, that such

holder shall be entitled to such distribution only if such holder votes in favor of confirmation of

the Joint Plan in all classes in which such holder is entitled to vote.

 To the extent that any Class 10 Claim holder votes against the Plan, its Class 10 Claim

shall immediately be deemed a Contested Claim and not an Allowed Claim.  The Debtors or

Reorganized Debtor shall then have the right to object to such Class 10 Claim through the

Claims Objection protocol provided for under the Joint Plan, or by one or more of the Adversary

Proceedings.

To the extent any or all of the Class 10 Claim Holders are plaintiffs, defendants, cross-

claimants, counter-claimants, cross-defendants, or 3rd party defendants to any of the pending

Adversary Proceedings, they shall be dismissed from said Adversary Proceedings upon entry of

the Confirmation Order.

Below is a table of all Class 10 Claim holders and the proposed Distribution on each

Claim:

|  | Last Name | First Name | Acct No. | Sub Debt Note Amount | January 2012 Distribution | Amount owed |
|---|---|---|---|---|---|---|
| 1 | Amrozowicz | Rich | 260031.0 | $301,869.61 | $173,802.83 | $128,066.78 |
| 2 | Anlicker | Michael (RBC) | 260121.0 | $9,076.76 | $4,092.31 | $4,984.45 |
| 3 | Betts | Robert (RBC) | 260172.0 | $43,767.58 | $17,354.95 | $26,412.63 |
| 4 | Blair | Kelly | 260163.0 | $58,545.37 | $22,348.37 | $36,197.00 |
| 5 | Blomme | Bob (RBC) | 260097.0 | $39,237.05 | $17,177.90 | $22,059.15 |
| 6 | Booth | Connie (RBC) | 260052.0 | $19,385.54 | $10,940.77 | $8,444.77 |
| 7 | Booth | Robert (RBC) | 260056.0 | $18,838.56 | $10,646.13 | $8,192.43 |
| 8 | Booth | Robert & Connie | 260030.0 | $90,521.83 | $51,696.07 | $38,825.76 |
| 9 | Bradley | John | 260041.0 | $87,360.73 | $41,062.46 | $46,298.27 |
| 10 | Burge | Gary Rev Trust | 260035.0 | $223,357.38 | $173,920.14 | $49,437.24 |
| 11 | Carpenter Family Trust | | 260154.0 | $35,358.93 | $15,997.61 | $19,361.32 |
| 12 | Clemens | Jon & Suzanne | 260125.0 | $6,185.22 | $2,802.18 | $3,383.04 |
| 13 | Deren | Christopher | 260040.0 | $94,816.82 | $34,861.69 | $59,955.13 |
| 14 | Deren | Patrick (RBC) | 260153.0 | $30,916.32 | $13,804.27 | $17,112.05 |
| 15 | Donlin | Sean | 260008.0 | $121,833.32 | $96,974.99 | $24,858.33 |
| 16 | Ewing | Richard | 260005.0 | $1,215,360.67 | $773,635.72 | $441,724.95 |
| 17 | First National Bank of Omaha (Gary & Diane Weihs) | | 260174.0 | $1,871,452.57 | $1,118,450.83 | $753,001.74 |
| 18 | Gardner | Cyrus & Christina | 260091.0 | $245,153.62 | $118,840.25 | $126,313.37 |
| 19 | Gearhart | Michael | 260101.0 | $47,204.41 | $22,013.34 | $25,191.07 |
| 20 | Gimbel | Ronald | 260151.0 | $46,283.27 | $20,523.87 | $25,759.40 |
| 21 | Gimbel | Steven | 260150.0 | $46,283.27 | $20,523.73 | $25,759.54 |
| 22 | Gordon | Deb | 260034.0 | $1,579.48 | $917.72 | $661.76 |
| 23 | Gordon | Todd | 260145.0 | $997.79 | $489.06 | $508.73 |
| 24 | Greer | Dennis | 260054.0 | $48,347.49 | $15,873.75 | $32,473.74 |
| 25 | Haupts | William (RBC) | 260064.0 | $23,331.19 | $8,130.33 | $15,200.86 |
| 26 | Hemminger | Dale | 260055.0 | $29,834.65 | $10,070.37 | $19,764.28 |
| 27 | Hofmeister | Douglas | 260089.0 | $34,644.53 | $17,195.47 | $17,449.06 |
| 28 | Hofmeister | Nancy (per) | 260157.0 | $43,816.55 | $15,991.51 | $27,825.04 |
| 29 | Howland | Amanda | 260104.0 | $3,072.31 | $1,963.83 | $1,108.48 |

| 30 | Howland | Amanda | 260135.0 | $4,252.83 | $1,474.66 | $2,778.17 |
| 31 | Koesters | Kara | 260114.0 | $17,997.64 | $8,120.26 | $9,877.38 |
| 32 | Koesters | Debbie Lee(RBC) | 260159.0 | $24,125.78 | $8,756.79 | $15,368.99 |
| 33 | Koesters | Luke F. (RBC) | 260158.0 | $20,784.44 | $7,547.29 | $13,237.15 |
| 34 | Lane | Eli, Philip & Richard Trust | 260156.0 | $14,595.12 | $5,390.06 | $9,205.06 |
| 35 | Lane | Jessica | 260118.0 | $46,292.25 | $20,015.15 | $26,277.10 |
| 36 | Lane | Harriet Trust | 260046.0 | $145,656.57 | $86,811.09 | $58,845.48 |
| 37 | Lane | Jonathan | 260110.0 | $15,979.42 | $293.45 | $15,685.97 |
| 38 | Lane | Jonathan | 260117.0 | $46,177.97 | $19,966.43 | $26,211.54 |
| 39 | Lane | Philip IRA (LT) | 260177.0 | $252,753.50 | $248,199.64 | $4,553.86 |
| 40 | Lane | Philip | 260022.0 | $156,164.29 | $62,970.32 | $93,193.97 |
| 41 | Lane | Philip (Mon Pur) | 260065.0 | $114,617.28 | $95,257.74 | $19,359.54 |
| 42 | Lane | Richard (IRA) | 260176.0 | $252,849.28 | $248,199.64 | $4,649.64 |
| 43 | Lane | Philip (Def Ben) | 260037.0 | $200,041.63 | $112,123.34 | $87,918.29 |
| 44 | Lane | Richard Trust | 260044.0 | $196,284.30 | $45,893.50 | $150,390.80 |
| 45 | Lane Asset Management | | 260023.0 | $474,712.84 | $409,084.40 | $65,628.44 |
| 46 | Larson | Dennis | 260038.0 | $231,850.99 | $75,374.79 | $156,476.20 |
| 47 | Leinen | Scott & Dena | 260139.0 | $44,703.22 | $20,680.30 | $24,022.92 |
| 48 | Ludwig | Thomas & Nancy | 260093.0 | $46,306.80 | $22,342.65 | $23,964.15 |
| 49 | Maday | Thomas & Jean | 260147.0 | $143,176.49 | $59,414.25 | $83,762.24 |
| 50 | Manatt | Chuck | 260029.0 | $181,962.07 | $105,162.78 | $76,799.29 |
| 51 | Markham | Philip | 260017.0 | $92,717.73 | $30,086.62 | $62,631.11 |
| 52 | McManaman | Betty | 260028.0 | $23,951.66 | $10,603.78 | $13,347.88 |
| 53 | Merkle | Brian & Peggy | 260058.0 | $22,257.59 | $6,659.23 | $15,598.36 |
| 54 | Moss | Robert | 260137.0 | $35,795.32 | $16,324.46 | $19,470.86 |
| 55 | Motsick | Lorrie (RBC) | 260134.0 | $5,714.22 | $2,415.58 | $3,298.64 |
| 56 | Motsick | Rick (RBC) | 260130.0 | $5,736.69 | $2,415.58 | $3,321.11 |
| 57 | Murtaugh | Tom & Jill | 260059.0 | $9,818.82 | $3,255.92 | $6,562.90 |
| 58 | Nichols | William (RBC) | 260155.0 | $38,876.33 | $16,959.41 | $21,916.92 |
| 59 | Nickel, Inc. | | 260171.0 | $87,290.97 | $32,792.07 | $54,498.90 |
| 60 | O'Connor | Brian & Jennifer | 260027.0 | $35,218.56 | $20,007.81 | $15,210.75 |
| 61 | Oestreicher | Jody | 260062.0 | $52,875.25 | $30,108.30 | $22,766.95 |
| 62 | Penney | Robert C. | 260173.0 | $84,920.28 | $34,392.81 | $50,527.47 |
| 63 | Petsche | Joe & Laura | 260105.0 | $16,343.57 | $7,763.64 | $8,579.93 |
| 64 | QRS Investment | | 260066.0 | $139,110.58 | $44,881.79 | $94,228.79 |
| 65 | Rees | Ryan | 260080.0 | $6,823.32 | $6,762.26 | $61.06 |
| 66 | Rees | Ryan | 260140.0 | $1,955.14 | $896.47 | $1,058.67 |

| | | | | | |
|---|---|---|---|---|---|
| 67 | Reinig | Elizabeth Jo Rev Trust | 260149.0 | $36,372.15 | $16,222.23 | $20,149.92 |
| 68 | Roberts | Brad (RBC) | 260069.0 | $102,975.49 | $34,285.94 | $68,689.55 |
| 69 | Ruppert | William/Eleanora | 260026.0 | $79,112.88 | $37,632.86 | $41,480.02 |
| 70 | Ruppert, Jr. | William | 260061.0 | $93,615.46 | $61,311.30 | $32,304.16 |
| 71 | Russell | Maurice/Mardene | 260060.0 | $102,470.45 | $43,648.36 | $58,822.09 |
| 72 | Salzinger | Steve | 260070.0 | $248,067.77 | $102,231.78 | $145,835.99 |
| 73 | Schaben | Gary & Jackie | 260164.0 | $22,610.57 | $8,784.26 | $13,826.31 |
| 74 | Schulte | Charles | 260009.0 | $38,155.86 | $31,914.08 | $6,241.78 |
| 75 | Schulte | Karen (LT) | 260143.0 | $42,256.13 | $28,975.46 | $13,280.67 |
| 76 | Schulte | Karen (per) | 260142.0 | $29,395.26 | $19,719.20 | $9,676.06 |
| 77 | Seivers | Kent & Judy | 260010.0 | $127,397.10 | $105,870.85 | $21,526.25 |
| 78 | Sorensen | Jerry (RBC) | 260057.0 | $67,957.63 | $25,646.24 | $42,311.39 |
| 79 | Stava | Ron & Grace | 260120.0 | $53,050.01 | $21,646.70 | $31,403.31 |
| 80 | Svendsen | Elliott & Ardis | 260113.0 | $12,157.58 | $5,443.07 | $6,714.51 |
| 81 | Svendsen | Doug (RBC) | 260107.0 | $24,231.21 | $11,155.31 | $13,075.90 |
| 82 | Teggatz | Curt | 260115.0 | $32,687.15 | $15,073.88 | $17,613.27 |
| 83 | Vincent | Thomas (RBC) | 260132.0 | $36,351.62 | $16,579.74 | $19,771.88 |
| 84 | Walsh | Patrick & Sheila | 260053.0 | $96,695.03 | $31,560.35 | $65,134.68 |
| 85 | Walsh | Patrick (RBC) | 260144.0 | $45,164.67 | $21,063.58 | $24,101.09 |
| 86 | Weihs | John | 260013.0 | $124,570.96 | $79,432.19 | $45,138.77 |
| 87 | Weihs | Karen Rev Trust | 260032.0 | $153,723.12 | $73,708.43 | $80,014.69 |
| 88 | Weihs | Karen(RBC)(IRA) | 260045.0 | $49,442.14 | $25,992.87 | $23,449.27 |
| 89 | Weihs | Karen (RBC) | 260165.0 | $167,493.86 | $75,414.87 | $92,078.99 |
| 90 | Wellmark, BCBS | | 260148.0 | $147,328.81 | $65,769.95 | $81,558.86 |
| 91 | Willis | Dean & Robin | 260162.0 | $165,891.58 | $59,916.92 | $105,974.66 |
| 92 | Woodruff | Michelle | 260042.0 | $113,928.73 | $58,112.69 | $55,816.04 |
| | | | Totals | 10,342,226.78 | $5,838,619.80 | $4,503,606.98 |

K.    *Class 11 – Allowed Subordinated Unsecured Claims (Received January*

*2012 Distribution in amount greater than Sub Debt Note Claim on Petition Date)*

1.    Classification: Class 11 consists of Allowed Subordinated Unsecured

Claims of Sub Debt Note Holders who received a January 2012 Distribution, and such

Distribution was greater than or in excess of their respective Allowed Sub Debt Note Claim as of

the Petition Date.

27

There are 25 Allowed Claims in Class 11 who were collectively owed $1,526,216.05 on their Sub Debt Note Claims as of the Petition Date, collectively received $4,589,224.06 from the January 2012 Distribution, and will collectively have to disgorge $3,063,008.01 on or before the Effective Date on account of overpayment of their Class 11 Claim.  Class 11 is Impaired.

2.       Treatment: Subject to the paragraphs below, unless the holder of an Allowed Class 11 Claim has agreed to different and/or less favorable treatment of such Claim, each holder of an Allowed Class 11 Claim shall be entitled to retain their January 2012 Distribution, and will not receive any further Distribution under the Joint Plan.

As a condition to retaining the Dividend they received from the January 2012 Distribution, and having an Allowed Claim under Class 11, each Class 11 Claim holder must (a) vote in favor of confirmation of the Joint Plan in all classes in which such holder is entitled to vote, and (b) consensually disgorge, and pay back to the Debtors, all amounts they individually received from the January 2012 Distribution in excess of their Sub Debt Note Claim as of the Petition Date, on or before the Effective Date.

To the extent that any Class 11 Claim holder votes against the Plan and/or fails or refuses to consensually disgorge and pay back to the Debtors all of the amounts such Claim holder received in excess of its Sub Debt Note Claim as of the Petition Date, the following treatment applies:

(a) The holder's Class 11 Claim shall immediately be deemed a Contested Claim and not an Allowed Claim;

(b) the Debtors or Reorganized Debtor shall then have the right to object to such Class 11 Claim through the Claims Objection protocol provided for under the Joint Plan, or by one or more of the Adversary Proceedings; and

(c)  the holder's Class 14 claim shall be assigned to Class 15 for purposes of distribution under the Joint Plan and shall be entitled to recover solely through Class 15.

In those cases where any Debtor or Reorganized Debtor shall pursue a Class 11 Claim holder for disgorgement, the costs and expenses to pursue such disgorgement, including but not limited to reasonable attorney fees and costs incurred by the Debtors and/or the Reorganized Debtor, shall be paid by such Class 11 Claim holder, who shall be taxed such costs and expenses by surcharge against their Class 11 Claim.  In all cases, to the extent the Debtors or Reorganized Debtor pursue such a Class 11 Claim holder after the Effective Date, the minimum tax such Claim shall be surcharged for costs and expenses shall not be less than $10,000.00.

To the extent any or all of the Class 11 Claim Holders consensually disgorge the amount they are required to disgorge on or before the Effective Date, to the extent such Class 11 Claim Holders are plaintiffs, defendants, cross-claimants, counter-claimants, cross-defendants, or 3rd party defendants to any of the pending Adversary Proceedings, they shall be dismissed from said Adversary Proceedings on the Effective Date.

Below is a table of all Class 11 Claim holders and the amount each Claim holder will be required to disgorge:

|  | Last Name | First Name | Acct. No. | Sub Debt Amount | January 2012 Dist | Disgorge |
|---|---|---|---|---|---|---|
| 1 | Block | David | 260018.0 | $174,994.26 | $235,487.12 | -$60,492.86 |
| 2 | Burge | Wendell | 260072.0 | $25,555.05 | $79,207.19 | -$53,652.14 |
| 3 | Burgoyne Roberts Trust | | 260083.0 | $41,062.07 | $91,101.07 | -$50,039.00 |
| 4 | Craton Capital GP, LLC | | 260074.0 | $262,036.68 | $944,466.75 | -$682,430.07 |
| 5 | Gingerich | Maynard/Carol | 260014.0 | $26,416.26 | $29,494.23 | -$3,077.97 |
| 6 | Goedken | Wayne | 260073.0 | $16,029.58 | $17,513.90 | -$1,484.32 |
| 7 | Hoegh | Donna | 260075.0 | $11,030.59 | $40,842.35 | -$29,811.76 |
| 8 | Hoegh | Winston | 260076.0 | $6,618.36 | $24,505.69 | -$17,887.33 |
| 9 | Kruse Investment Co. | | 260077.0 | $33,091.76 | $798,352.26 | -$765,260.50 |
| 10 | Lane | Harriet | 260043.0 | $24,932.26 | $26,976.11 | -$2,043.85 |

| 11 | Noble | James | 260078.0 | $5,515.29 | $20,348.70 | -$14,833.41 |
| 12 | Pond | Preston | 260025.0 | $97.13 | $237,843.44 | -$237,746.31 |
| 13 | Pond | Preston (RBC) | 260106.0 | $38.01 | $27,788.77 | -$27,750.76 |
| 14 | Pond | Vicki (RBC) | 260131.0 | $33.87 | $1,806.84 | -$1,772.97 |
| 15 | Rees | Gary/Michelle | 260011.0 | $87,420.57 | $157,926.12 | -$70,505.55 |
| 16 | Rees | Tyler | 260081.0 | $3,309.19 | $12,353.31 | -$9,044.12 |
| 17 | Reinig | Ed | 260082.0 | $23,044.42 | $82,220.19 | -$59,175.77 |
| 18 | Schmitz | Steve | 260004.0 | $696,844.22 | $704,353.91 | -$7,509.69 |
| 19 | Schomers | Don | 260084.0 | $5,613.96 | $20,757.81 | -$15,143.85 |
| 20 | Staiert | Walter/Laurie | 260088.0 | $34,533.95 | $53,615.92 | -$19,081.97 |
| 21 | Weihs | David | 260141.0 | $430.55 | $4,811.33 | -$4,380.78 |
| 22 | Weihs | Ron | 260085.0 | $8,078.98 | $29,986.52 | -$21,907.54 |
| 23 | Westphalen | Michael (RBC) | 260116.0 | $356.69 | $308,092.44 | -$307,735.75 |
| 24 | Zaccone | Mark | 260012.0 | $25,431.11 | $319,686.04 | -$294,254.93 |
| 25 | Zaccone Investments | | 260007.0 | $13,701.24 | $319,686.04 | -$305,984.80 |
| | Totals | | | $1,526,216.05 | $4,589,224.06 | $3,063,008.01 |

> ### L. *Class 12 – Contested Dissociated Equity Interests (Received January 2012 Distribution but held no Allowed Sub Debt Note Claim) (Total Disgorgement)*

1.   <u>Classification</u>:  Class 12 consists of the Contested Dissociated Equity Interest holders who received a dividend from the January 2012 Distribution but did not, and do not, hold a Sub Debt Note Claim.  Class 12 is impaired.

2.   <u>Treatment</u>:   There are 5 Contested Dissociated Equity Interest holders in Class 12 who collectively received $295,338.44 from the January 2012 Distribution, and will be required to collectively disgorge $295,338.44.  The Class 12 Contested Dissociated Equity Interest holders will be required to disgorge, and pay back to the Debtors, all amounts they individually received from the January 2012 Distribution, on or before the Effective Date.  The Class 12 Contested Dissociated Equity Interest holders who consensually disgorge the amounts due on or before the Effective Date shall have their Dissociated Equity Interests treated in Class 15.

To the extent that any Class 12 Dissociated Equity Interest holder votes against (opts out) the Joint Plan and/or fails or refuses to consensually disgorge and pay back to the Debtors all of the amounts such Dissociated Equity Interest holder received from the January 2012 Distribution, the following treatment shall apply:

(a)    Such holder's Class 12 Dissociated Equity Interests shall immediately be deemed a Contested Interest and not an Allowed Interest;

(b)    the Debtors or Reorganized Debtor shall then have the right to object to such Class 12 Interest through the Claims Objection protocol provided for under this Joint Plan, or by one or more of the Adversary Proceedings; and

(c)    such holder's Class 14 claim shall be assigned to Class 15 for purposes of distribution under the Joint Plan and shall be entitled to recover solely through Class 15.

In those cases where any Debtor or Reorganized Debtor shall pursue a Class 12 Interest holder for disgorgement, the costs and expenses to pursue such disgorgement, including but not limited to reasonable attorney fees and costs incurred by the Debtors and/or the Reorganized Debtor, shall be paid by such Class 12 Interest holder, who shall be taxed such costs and expenses by surcharge against their Class 12 Interest.  In all cases, to the extent the Debtors or Reorganized Debtor pursue such a Class 12 Interest holder after the Effective Date, the minimum tax such Interest shall be surcharged for costs and expenses shall not be less than $10,000.00.

To the extent any or all of the Class 12 Dissociated Equity Interest holders consensually disgorge the amount they are required to disgorge on or before the Effective Date, and to the extent such Class 12 Dissociated Equity Interest holders are plaintiffs, defendants, cross-claimants, counter-claimants, cross-defendants, or 3rd party defendants to any of the pending

Adversary Proceedings, they shall be dismissed from said Adversary Proceedings on the Effective Date.

Below is a table of all Class 12 Contested Dissociated Equity Interest holders and the amount each Claim holder will be required to disgorge:

### Class 12 Total Disgorgement

|   | Last Name | First Name | Acct No. | Disgorge |
|---|---|---|---|---|
| 1 | Agriculture, Inc. | | 260020.0 | -$130,817.67 |
| 2 | Beach | Ron & Mona Jones | 260108.0 | -$90,377.99 |
| 3 | Goedken | Wayne (RBC) | 260019.0 | -$39,525.34 |
| 4 | VanBaale, LLC | | 260138.0 | -$31,492.19 |
| 5 | Westphalen | Casey | 260122.0 | -$3,125.25 |
| | | | Total | $295,338.44 |

M.    *Class 13 – Allowed Current Equity Interest Holders*

1.    Classification:  Class 13 consists of the Allowed Current Equity Interests in Natural Pork as of the Petition Date. There are Twenty-Four (24) Allowed Current Equity Interests as of the Petition Date. Class 13 shall also include the Interests held by Paul Stewart, Diane Stewart, Frederick & Rinske Bolander, Joy Dinsdale, Frederick WW Bolander, R II B Family, LLC and Diane Weihs.  Class 13 is Impaired.

|   | Name | % |
|---|---|---|
| | | |
| 1 | Bloomquist, Cynthia | 0.45% |
| 2 | Bolander, Frederick WW | 2.95% |
| 3 | Bolander, Frederick & Rinske | 0.30% |
| 4 | Burge, Wendell | 0.26% |
| 5 | Cass, Joseph & Amy | 1.88% |
| 6 | Christofferson, Paul & Susan | 0.35% |
| 7 | Croghan, Pete & Lois | 0.25% |
| 8 | D&G Farms | 5.35% |
| 9 | Dinsdale, Joy | 0.89% |
| 10 | Finken, Bob | 0.16% |
| 11 | Ford, Michael | 0.17% |
| 12 | Gray, Randy | 0.03% |
| 13 | Handlos, Lawrence & Doris | 56.50% |

|   | Name | % |
|---|---|---|
| 14 | Handlos, Pat | 0.25% |
| 15 | Juckem, Jay & Denise | 0.76% |
| 16 | Lane, Philip | 1.63% |
| 17 | Lorack, Tim | 0.13% |
| 18 | Lorack, Tim | 2.12% |
| 19 | Lorack, Todd | 0.31% |
| 20 | Lorack, Todd | 2.05% |
| 21 | Neitzel, Charles | 0.46% |
| 22 | Nyman, Mark & Shari | 0.02% |
| 23 | R II B Family | 3.49% |
| 24 | Schwartz, Gail | 0.16% |
| 25 | Stewart, Diane | 0.06% |
| 26 | Stewart, Paul | 0.01% |
| 27 | Thorbeck, David | 0.45% |
| 28 | Weihs, Diane | 15.94% |

| 29 | Wigley, Michael | 0.43% |
| 30 | Wittrup, Richard (Trust) | 0.61% |
| 31 | Wood, Mark & Nancy | 1.57% |

| | | |
|---|---|---|
| | Total | 100.00% |

2.  **Treatment.** Except to the extent that an Allowed Current Equity Interest holder agrees to different and/or less favorable treatment of their Equity Interest, such Equity Interest holder shall receive a Pro-Rata dividend equal to Two-Thirds (2/3rd) of the Equity Interests Fund.

N.  *Class 14 – Dissociated Equity Interests*

1.  **Classification.** Class 14 consists of the Allowed Dissociated Equity Interests in Natural Pork as of the Petition Date. There are One Hundred and Twenty-Eight (128) Allowed Dissociated Equity Interests as of the Petition Date.  Class 14 is Impaired.

| | Name | % | | | |
|---|---|---|---|---|---|
| 1 | AgriCulture, Inc. | 1.32% | 25 | FNBO (Gary Weihs) | 10.51% |
| 2 | Amrozowicz, Rich | 1.76% | 26 | Gardner,Cyrus | 1.20% |
| 3 | Anliker, Michael | 0.04% | 27 | Gearhart, Michael | 0.22% |
| 4 | Beach, Ron & Mona Jones | 0.42% | 28 | Gimbel, Ronald | 0.21% |
| 5 | Beach, Ron & Mona Jones | 0.91% | 29 | Gimbel, Steven | 0.21% |
| 6 | Beach, Ron (LT) | 1.02% | 30 | Gingerich, Maynard & Carol | 0.32% |
| 7 | Betts, Robert (RBC) | 0.18% | 31 | Goedken, Wayne | 0.19% |
| 8 | Blair, Kelly (pers) | 0.23% | 32 | Gordon, Deb | 0.01% |
| 9 | Block, David | 2.36% | 33 | Gordon, Todd | 0.00% |
| 10 | Blomme, Bob (RBC) | 0.19% | 34 | Greer, Dennis | 0.16% |
| 11 | Booth, Robert | 0.11% | 35 | Haupts, William | 0.08% |
| 12 | Booth, Robert & Connie | 0.52% | 36 | Hemminger, Dale (LT) | 0.10% |
| 13 | Booth, Connie (RBC) | 0.11% | 37 | Hoegh, Donna | 0.41% |
| 14 | Bradley, John | 0.41% | 38 | Hoegh, Winston | 0.25% |
| 15 | Burge, Wendell (pers) | 0.86% | 39 | Hofmeister, Douglas & Nancy | 0.17% |
| 16 | Burge, Gary & Jackie Rev Trust | 1.75% | 40 | Hofmeister , Nancy (pers) | 0.17% |
| 17 | Burgoyne Roberts Trust | 0.91% | 41 | Howland, Amanda (LT) | 0.02% |
| 18 | Carpenter Family Trust | 0.16% | 42 | Howland, Amanda (LT) | 0.01% |
| 19 | Clemens, Jon & Suzanne | 0.03% | 43 | Koesters, Kara | 0.08% |
| 20 | Craton Capital GP, LLC | 9.41% | 44 | Koesters, Luke F. | 0.08% |
| 21 | Deren, Christopher | 0.35% | 45 | Koesters, Debbie Lee (RBC) | 0.09% |
| 22 | Deren, Patrick | 0.14% | 46 | Kruse Investment Co. | 7.95% |
| 23 | Donlin, Sean | 0.98% | 47 | Lane, Eli, Philip & Richard | 0.05% |
| 24 | Ewing, Richard | 7.74% | 48 | Lane, Jonathan | 0.00% |
| | | | 49 | Lane, Harriet (pers) | 0.27% |

| | | | | | | |
|---|---|---|---|---|---|---|
| 50 | Lane, Philip (pers) | 0.63% | | 88 | Ruppert, William & Eleanora | 0.38% |
| 51 | Lane Asset Management | 4.08% | | 89 | Ruppert Jr., William (pers) | 0.62% |
| 52 | Lane, Jessica from Eli Lane | 0.20% | | 90 | Russell, Maurice & Mardene | 0.44% |
| 53 | Lane, Jonathan from Eli Lane | 0.20% | | 91 | Salzinger, Steve | 1.02% |
| 54 | Lane, Harriet (Trust) | 0.87% | | 92 | Schaben, Gary & Jackie | 0.09% |
| 55 | Lane, Richard (Trust) | 0.46% | | 93 | Schmitz, Steve | 7.10% |
| 56 | Lane, Philip (Defined Benefit) | 1.12% | | 94 | Schomers, Don | 0.21% |
| 57 | Lane, Philip (Money Purch Plan) | 0.95% | | 95 | Schulte, Charles | 0.32% |
| 58 | Larson, Dennis | 0.75% | | 96 | Schulte, Karen | 0.20% |
| 59 | Leinen, Scott & Dena | 0.21% | | 97 | Schulte, Karen (pers) | 0.29% |
| 60 | Ludwig, Thomas & Nancy | 0.23% | | 98 | Seivers, Kent & Judy | 1.07% |
| 61 | Maday, Thomas & Jean | 0.60% | | 99 | Sorensen, Jerry (RBC) | 0.28% |
| 62 | Manatt, Chuck | 1.06% | | 100 | Staiert, Walter & Laurie | 0.54% |
| 63 | Markham, Philip | 0.30% | | 101 | Stava, Ron & Grace | 0.23% |
| 64 | McManaman, Betty | 0.11% | | 102 | Stewart, Diane | 0.01% |
| 65 | Merkle, Brian & Peggy | 0.07% | | 103 | Svendsen, Elliott & Ardis | 0.05% |
| 66 | Moss, Robert | 0.16% | | 104 | Svendsen, Douglas (RBC) | 0.11% |
| 67 | Motsick, Rick | 0.03% | | 105 | Teggatz, Curt | 0.15% |
| 68 | Motsick, Lorrie (RBC) | 0.03% | | 106 | VanBaale, LLC | 0.31% |
| 69 | Murtaugh, Tom & Jill | 0.03% | | 107 | Vincent, Thomas | 0.17% |
| 70 | Nichols, William | 0.17% | | 108 | Walsh, Patrick & Shelia | 0.32% |
| 71 | Nickel, Inc. | 0.35% | | 109 | Walsh, Patrick | 0.21% |
| 72 | Noble, James | 0.21% | | 110 | Weihs, David | 0.05% |
| 73 | O'Connor, Brian & Jennifer | 0.20% | | 111 | Weihs, John | 0.80% |
| 74 | Oestreicher, Jody (LT) | 0.30% | | 112 | Weihs, Ron | 0.30% |
| 75 | Penney, Robert C. | 0.37% | | 113 | Weihs, Karen (Roth IRA) | 0.26% |
| 76 | Petsche, Joe & Laura | 0.08% | | 114 | Weihs, Karen (RBC) | 0.76% |
| 77 | Pond, Preston | 0.28% | | 115 | Weihs, Karen Revocable Trust | 0.80% |
| 78 | Pond, Preston | 2.38% | | 116 | Wellmark BCBS | 0.67% |
| 79 | Pond, Vicki | 0.02% | | 117 | Westphalen, Casey (LT) | 0.03% |
| 80 | QRS Investments | 0.45% | | 118 | Westphalen, Michael (SEP) | 0.05% |
| 81 | Rees, Gary & Michelle | 1.59% | | 119 | Willis, Dean & Robin | 0.60% |
| 82 | Rees, Ryan | 0.01% | | 120 | Woodruff, Michelle | 0.59% |
| 83 | Rees, Tyler | 0.12% | | 121 | Zaccone, Mark | 3.10% |
| 84 | Rees, Ryan (LT) | 0.07% | | 122 | Zaccone Investments | 3.22% |
| 85 | Reinig, Ed | 0.83% | | | | |
| 86 | Reinig, Elizabeth Jo Rev. Trust | 0.16% | | | Total | 100.00% |
| 87 | Roberts, Brad (RBC) | 0.34% | | | | |

2.      Treatment.  Except to the extent that an Allowed Dissociated Equity

Interest holder agrees to different and/or less favorable treatment of their Dissociated Equity

Interest, such Dissociated Equity Interest holder shall receive a Pro-Rata dividend equal to One-

Third (1/3rd) of the Equity Interests Fund.

To the extent the holder of a Class 14 claim votes against (opts out) of the Joint Plan in

any Class in which such holder is entitled to vote, such holder's Class 14 claim shall be assigned

to Class 15 for purposes of distribution under the Joint Plan and shall be entitled to recover

solely through Class 15.

> O.      *Class 15 – Opt-Out Dissociated Equity Interests*

1.      <u>Classification</u>**.** Class 15 consists of the Allowed Dissociated Equity

Interests in Natural Pork as of the Petition Date that are assigned from Class 14 to this Class.

Class 15 is Impaired.

2.      <u>Treatment</u>**.**

(a)      Voting:  The holders of Dissociated Equity Interests are assigned to Class 15 on

account of their vote in other Classes.  As a result, Class 15 shall not vote and is deemed to reject

the Joint Plan.

(b)      Distribution:  The holders of Allowed Dissociated Equity Interests in Class 15

shall be entitled to recover solely against the Contested Interests Reserve upon the assignment of

the Contested Interests Reserve to Class 15.  The holders of Allowed Dissociated Equity

Interests shall receive no other distribution under the Joint Plan.

> P.      <u>*Reservation of Rights on Classification Disputes*</u>.

In the event any Creditor or Interest holder challenges their classification under the Joint

Plan, the Debtors reserve the right to seek Court determination of the appropriate classification.

Such determination shall not be a condition precedent to confirmation of the Joint Plan and may

be effected through the Claims or Interest objection process.  Should the Creditor or Interest

Holder prevail in their classification challenge, such Creditor or Interest Holder shall be treated

under the Joint Plan as if such Creditor or Interest Holder were classified as so determined. In

addition, the classification of Claims or Interest in specific classes is not an admission of the

ultimate validity, enforceability, perfection, or a liability of such Claims or Interests, and the

Debtors expressly reserve all rights with respect to any objections to or other litigation on such

Claims or Interests.

## ARTICLE IV - MEANS FOR IMPLEMENTATION OF THE JOINT PLAN
### A.        *General Summary*.

Upon Confirmation, all the Bankruptcy Cases will be substantially consolidated, meaning

all the Creditors and Interest holders from all the Bankruptcy Cases will be treated as if there was

only one claims register and all of the assets from all of the bankruptcy estates will be used to

pay the Allowed Claims of Creditors and the Allowed Interests of Interest holders from all of the

bankruptcy estates.  Additionally, the Debtors in the Crawfordsville Case, the Brayton Case, the

North Harlan Case and the South Harlan Case will be dissolved, liquidated and their bankruptcy

cases closed, and the Natural Pork Case shall be the sole surviving Reorganized Debtor.  Final

Reports and Motions for Entry of Final Decrees in the Crawfordsville Case, the Brayton Case,

the North Harlan Case and the South Harlan Case shall be filed by the Reorganized Debtor

within thirty (30) days of the Effective Date.

On or before the Effective Date, and subject to funding of the Contested Interests

Reserve, the Reorganized Debtor shall make the Distributions provided for under the Joint Plan

to Creditors with Allowed Unclassified Claims and Allowed Classified Claims in Classes 1

through 5, and 7 through 10, inclusive.  The Distributions shall be made by the Disbursing Agent

from Cash on hand held by the Reorganized Debtor.  Any Unclassified Claims or Classified

Claims that are not Allowed as of the Effective Date, but become Allowed Claims pursuant to a Final Order after the Effective Date, shall be promptly paid after the Effective Date and after they have become Allowed Claims by Final Order of the Court.

To the extent holders of Claims or Interests in Classes 11 and 12 fail and/or refuse to disgorge the amounts they are required to disgorge on or before the Effective Date pursuant to the Joint Plan, the Reorganized Debtor shall pursue such holders of Claims and/or Interests in Classes 11 and 12 by objection to Claim or Interest or by the Adversary Proceedings, until all amounts required to be disgorged are paid to the Reorganized Debtor, compromised and/or settled pursuant to a Final Order of the Court, or unless relieved of the obligation to disgorge by Final Order of the Court.

To the extent Natural Pork has not sold and/or liquidated all of its remaining assets, namely the Williamsburg and Windthorst properties, by the Effective Date, the Reorganized Debtor shall continue to pursue sales or other dispositions of its remaining assets.

To the extent Natural Pork has not completed the liquidation and formal dissolution of Natural Porc Production Olt, SRL with the Romanian authorities prior to the Effective Date, the Reorganized Debtor shall complete the process of such liquidation and formal dissolution.

B.        *The Contested Interests Reserve.*

Upon confirmation of the Joint Plan, the Reorganized Debtor shall establish the Contested Interests Reserve. The initial beneficiaries of the Contested Interests Reserve shall be the holders of Opt-Out Dissociated Equity Interests in Class 14 whose Dissociated Equity Interests are assigned to Class 15 pursuant to the Joint Plan. A beneficiary's interest in the Contested Interests Reserve shall equal an amount sufficient to make a full distribution to such

beneficiary if such beneficiary's Dissociated Equity Interest was allowed in full as a Class 6

claim (the "Class 15 Reserve Amount").

The final disposition of the funds in the Contested Interests Reserve is dependent upon

the resolution of the Adversary Proceedings against the holders of Opt-Out Dissociated Equity

Interests entitled to distribution solely through Class 15, as follows:

i.     If the Court denies the relief sought by the Debtors against a defendant in all

Adversary Proceedings, such defendant's Class 15 Reserve Amount shall be

released from the Contested Interests Reserve and distributed to such defendant in

full satisfaction of defendant's Dissociated Equity Interests.

ii.    If the Court grants the relief sought by the Debtors against a defendant in any

Adversary Proceeding, such defendant's interest in the Contested Interests

Reserve shall be released and an amount equal to such defendant's Class 15

Reserve Amount shall be irrevocably transferred to the Equity Interests Fund for

distribution to Classes 13 and 14.

C.     *Equity Interests Fund - Deposits and Distributions.*

The balance of Cash on deposit with the Reorganized Debtor after establishment of the

Contested Interests Reserve and payment of Allowed Claims on the Effective Date, and any

funds collected by the Reorganized Debtor after the Effective Date from holders of Claims and

Interests in Classes 11 and 12, shall be segregated and deposited into the Equity Interests Fund.

After resolution by the Court by Final Order of all disputed and Contested Claims, and

after segregating a reserve for Post-Effective Date professional fees and expenses, the

Reorganized Debtor shall make an initial Interim Distribution to Classes 13 and 14 on account of

Allowed Current Equity Interests and Allowed Dissociated Equity Interests.  The Reorganized

Debtor may make additional Interim Distributions as reasonable and necessary.

Upon resolution of all disputed and Contested Interests by Final Order of the Court,

including resolution of the rights and entitlements of parties to the Contested Interests Reserve

and the assignment of any amounts from the Contested Interests Reserve to the Equity Interests

Fund, and after making provision for payment of final professional fees and expenses, the

Reorganized Debtor shall make a Final Distribution on account of Allowed Dissociated Eqiuty

Interests in Classes 13 and 14 from the Equity Interests Fund, and to Class 15 of any amounts

reserved for beneficiaries in the Contested Interests Reserve.  Within thirty (30) days after the

Final Distribution, the Reorganized Debtor shall prepare and file a Final Report and Motion for

Entry of Final Decree.

       *D.*       *Effect of Confirmation*.

       1.       Substantive Consolidation of the Bankruptcy Cases.

Upon Confirmation, the Bankruptcy Cases shall be substantively consolidated

pursuant to Bankruptcy Code Section 302(b), Bankruptcy Rule 1015(b) and the holdings in the

cases In re Cyberco Holdings, Inc., 431 B.R. 404, 410 (W.D. Mich. 2010), In re Giller, 962 F.2d

796 (8th Cir. 1992), and In re Gilbertson Restaurants, LLC, No. 04-00385, 2005 WL 783063 at

*5 (Bankr. N.D. Iowa Apr. 4, 2005).

       2.       Reorganized Debtor.

Upon Confirmation, the Debtor Natural Pork shall become the Reorganized Debtor.

Pursuant to the substantive consolidation of the Bankruptcy Cases, the assets and liabilities of

Crawfordsville, Brayton, North Harlan and South Harlan bankruptcy estates shall become the

assets and liabilities of the Reorganized Debtor, and the Crawfordsville, Brayton, North Harlan

and South Harlan Debtors shall be deemed liquidated and dissolved and all of their Interests

cancelled.  The Reorganized Debtor shall prepare and file Final Reports and Motions for Entry of

Final Decree in the Crawfordsville, Brayton, North Harlan and South Harlan Cases within thirty

(30) days of the Effective Date.

        3.      <u>Equitable Subordination of Contested Claims and Interests of SIA Parties
and Dissociated Equity Interests</u>.

        Upon Confirmation, the Contested Claims of the ICC/SIA Parties, if allowed, and the

Dissociated Equity Interests, that vote to accept the Joint Plan, shall be equitably subordinated to

the Claims and Interests of all Allowed Claim holders and Allowed Current Equity Interests in

Classes 1 through 13, inclusive, and classified and treated in Class 14, pursuant to Bankruptcy

Code Sections 510(a), (b), Bankruptcy Rule 7001(8), and applicable decisional law.  Those

Dissociated Equity Interests that vote against (opt out) of  the Joint Plan shall be deemed to be

Opt-Out Dissociated Equity Interests and assigned for purposes of distribution to Class 15.

        4.      <u>Discharge and Release of Claims</u>.

        Since the Joint Plan provides for the liquidation of all or substantially all of the

property of bankruptcy estates, and since the Debtors will not engage in business after

consummation of the Joint Plan, and since the Debtors would otherwise be denied a discharge

under Bankruptcy Code Section 727(a) if the case were a case under Chapter 7, the provisions of

Bankruptcy Code Section 1141(d)(3) are applicable.

        5.      <u>Injunction</u>.

        Except as otherwise expressly provided for in this Joint Plan or the Confirmation Order,

all persons who have held, hold, or may hold Claims against the Debtors and who have held,

hold or may hold Interests in the Debtors, are permanently enjoined (a) from commencing or

continuing in any manner any action or other proceeding of any kind with respect to any such

Claim or Interest against the Debtors; (b) from the enforcement, attachment, collection or

recovery by any manner or means of any judgment, award, decree or order against the Debtors,

and their property; (c) from creating, perfecting, or enforcing any encumbrance of any kind

against the Debtors, or their property with respect to such Claim; and (d) from asserting any

setoff, right of subrogation, or recoupment of any kind against any obligation due the Debtors, or

their property with respect to any such Claim.

6.  <u>Exoneration and Reliance</u>.

Provided that the respective affiliates, officers, directors, shareholders, members,

partners, representatives, attorneys, financial advisors, and agents of the Debtors, and the Official

Committee act in good faith, they shall not be liable to any claimant, Equity Interest Holder, or

other party with respect to any action, forbearance from action, decision, or exercise of discretion

taken during the period from the Petition Date to the Effective Date in connection with: (a) the

operation of the Debtors; (b) the proposal or implementation of any of the transactions provided

for, or contemplated in this Joint Plan; or (c) the administration of this Joint Plan or the assets

and property to be distributed pursuant to this Joint Plan other than for willful misconduct or

gross negligence.  The Debtors, and the Official Committee and their respective affiliates,

officer, directors, shareholders, members, partners, representatives, attorneys, financial advisors,

and agents may rely upon the opinions of counsel, certified public accountants and other experts

or professionals employed by the Debtors, and such reliance shall conclusively establish good

faith.  In any action, suit or proceeding by any Creditor, Interest holder or other party in interest

contesting any action by, or non-action of, Debtors, or their respective affiliates, officers,

directors, shareholders, members, partners, representatives, attorneys, financial advisors, and

agents as not being in good faith, the reasonable attorneys' fees and costs of the prevailing party

shall be paid by the losing party.

       7.     <u>Binding Effect</u>.

The provisions of the Joint Plan, the Confirmation Order and any associated findings of

fact or conclusions of law shall bind the Debtors, any entity acquiring property under the Joint

Plan and any Creditor of or Interest holder in the Debtors, whether or not the Claim of such

Creditor or Interest holder is Impaired under the Joint Plan and whether or not such Creditor or

Interest holder has accepted the Joint Plan.

       8.     <u>Vesting of Property</u>.

Confirmation of the Joint Plan vests all of the property of the Debtors' bankruptcy

estates, as defined by Bankruptcy Code Section 541, including Causes of Action, in the

Reorganized Debtor where it shall be held in trust for the benefit of the Creditors and Interest

holders provided for in the Joint Plan.

As of the Confirmation Date, the assets of the Debtors dealt with under the Joint Plan

shall be free and clear from any and all Claims or the holders of Claims or Interests, except as

specifically provided otherwise in the Joint Plan or the Confirmation Order.  On the

Confirmation Date, the Reorganized Debtor shall be entitled to operate and conduct its affairs

without further order of the Court and to use, acquire and distribute any of its property free of

any restrictions of the Bankruptcy Code or the Court, except as specifically provided otherwise

in the Joint Plan or Confirmation Order.  The terms of the Joint Plan shall supersede the terms of

all prior orders entered by the Court in the Bankruptcy Cases and the terms of all prior

stipulations and other agreements entered into by the Debtors with other parties in interest,

except as specifically recognized in the Joint Plan or the Confirmation Order.

E.        *Payment of Allowed Claims*.

On or before the Effective Date, the Reorganized Debtor shall make all Distributions called for or provided for under the Joint Plan, to all Creditors with Allowed Unclassified and Classified Claims in Classes 1 through 5, and 7 through 10, inclusive.  To the extent Creditors with Allowed Claims have not provided the Reorganized Debtor with a social security number or other tax identification number, the Reorganized Debtor shall withhold such Distribution until so provided by such Claim holder.  The Distributions shall be made by the Disbursing Agent from Cash on hand and held by the Reorganized Debtor. Any Unclassified Claims or Classified Claims that are not Allowed as of the Effective Date, but become Allowed Claims pursuant to a Final Order after the Effective Date, shall be promptly paid after the Effective Date and after they have become Allowed Claims by Final Order of the Court.

F.   *Sale of Property*

To the extent Natural Pork has not sold, liquidated or otherwise disposed of its interests in the Williamsburg and Windthorst properties prior to the Effective Date, the Reorganized Debtor shall continue to pursue sale or such other disposition of those properties.  The sale or other disposition of the Williamsburg and Windthorst properties may be either by public or private sale, and may be by auction.  Any sales may be concluded without further order of the Bankruptcy Court. To the extent any such sales are proposed to an Insider of the Debtors, the Reorganized Debtor shall first provide ten (10) days written notice of its intention to sell such property to an Insider to the United States Trustee.  If the United States Trustee objects within such ten (10) day period, the Reorganized Debtor may not sell property to an Insider without further order of the Bankruptcy Court.

G.  *Pursuit of Disgorgement from Creditors and Interest Holders*

Pursuant to the treatment provided for Claim holders in Class 11, as a condition to retaining their January 2012 Distribution, such Claim holders must consensually disgorge all amounts in excess of their Sub Debt Note Claim, on or before the Effective Date.  Additionally, the Interest holders in Class 12 are compelled under the Joint Plan to disgorge all amounts they received from the January 2012 Distribution on or before the Effective Date.  To the extent any holders of Claims or Interests in Classes 11 and 12 fail and/or refuse to disgorge the full amounts they are required to disgorge on or before the Effective Date in Cash to the Reorganized Debtor, pursuant to the Joint Plan, the Reorganized Debtor shall pursue such holders of Claims and/or Interests in Classes 11 and 12 by objection to their respective Claim or Interest, or by or through one of the Adversary Proceedings, or by an adversary proceeding filed after Confirmation, until all amounts required to be disgorged are paid to the Reorganized Debtor, compromised and/or settled pursuant to a Final Order of the Court, or unless relieved of the obligation to disgorge by Final Order of the Court.

The Reorganized Debtor shall be authorized to pursue the ICC, any SIA Party, or any Dissociated Equity Interest Holder, for damages arising from wrongful dissociation, in connection with the SIA or any Notice of Dissociation served by a Dissociated Equity Interest holder, either based on Section 5.5 of the Natural Pork Partnership Agreement and/or Iowa Code Section 486A.

H.          *Dissolution of Natural Porc Production Olt, SRL*

Prior to Confirmation, Natural Pork began the formal legal process of liquidating and dissolving its wholly-owned subsidiary Natural Porc Production Olt, SRL, a corporate entity formed and existing under the laws of Romania, pursuant to applicable law. To the extent

Natural Pork has not completed the liquidation and formal dissolution of Natural Porc

Production Olt, SRL with the Romanian authorities prior to the Effective Date, the Reorganized

Debtor shall continue to complete the process of such liquidation and formal dissolution, with

the assistance of General Reorganization Counsel and the professionals at Deloitte Romania

engaged by Natural Porc Production Olt, SRL.  Any funds remaining on deposit by Natural Porc

Production Olt, SRL in Romania after dissolution shall be forwarded to the Reorganized Debtor

for deposit into the Equity Interests Fund.

        I.             *Amending Tax Returns*

Upon Confirmation, for state and federal tax purposes, the Dissociated Equity Interests

that receive distributions in Classes 13 and 14 shall be deemed to have been Current Equity

Interests, and the January 2012 Distribution received by those certain SIA Parties shall be

deemed to have been a partial repayment of debt.  Within thirty (30) days of the Effective Date,

the Reorganized Debtor shall file amended state and federal tax returns for the fiscal years 2011

and 2012, with such amendments recognizing the Dissociated Equity Interests as Current Equity

Interests.

To the extent a distribution is made to Dissociated Equity Interests out of the Contested

Interests Reserve in Class 15, the January 2012 Distribution and all distributions received by

such parties on account of Class 15 treatment shall be deemed to be returns of equity for

purposes of state and federal taxes.  The Reorganized Debtor shall, in such case, issue the

appropriate forms to such parties and file the appropriate returns.

        J.             *Litigation.*

Upon Confirmation, the Reorganized Debtor shall retain all Claims or Causes of Action

that it has or holds against any party, whether arising pre or post-petition, subject to applicable

state law statutes of limitation and related decisional law, whether sounding in tort, contract or

other theory or doctrine of law or equity, and specifically including the Adversary Proceedings

and any Causes of Action existing pursuant to Bankruptcy Code Sections 544, 545, 547, 548,

549 and 550.  Confirmation of the Plan effects no settlement, compromise, waiver or release of

any Cause of Action unless the Joint Plan or Confirmation Order specifically and unambiguously

so provide.  The nondisclosure or non-discussion of any particular Cause of Action is not and

shall not be construed as a settlement, compromise, waiver or release of such Cause of Action.

> K.        *Post Confirmation Management.*

In compliance with Bankruptcy Code Section 1129(a)(5), the Debtors duly disclose that

upon Confirmation, the post-confirmation management and governance of the Reorganized

Debtor shall be by Lawrence Handlos as Managing Partner, and two (2) other persons designated

by the Official Committee. Expenses incurred in conjunction with performance of management

and governance obligations to the Reorganized Debtor by these parties are entitled to be

reimbursed by the Reorganized Debtor, including reasonable outside counsel fees.

> L.        *Post Confirmation Compensation of Professional Persons.*

Compensation for services rendered by a Professional Person after the Confirmation Date

for reimbursement of expenses incurred in connection therewith need not be approved by the

Court.  Professional Persons may invoice the Reorganized Debtor directly, and the Reorganized

Debtor may pay from the Equity Interests Fund; provided, however, that in the event of a dispute

between the Reorganized Debtor and the Professional Person regarding such compensation or

reimbursement, the Professional Person may submit an application to the court for review of the

request to compensation and reimbursement, and the Court retains jurisdiction to hear and

approve such application and compel payment thereon.  Such post confirmation compensation

for services rendered and reimbursement of expenses shall be considered an ordinary course of

business expense pursuant to this Joint Plan.

          **M.**          *All Section 1129(a)(4) Payments Subject to Court Review*.

As required by Bankruptcy Code Section 1129(a)(4), all payments made or to be made by

the Debtors or Reorganized Debtor for services or for costs and expenses in connection with the

Bankruptcy Cases, or in connection with the Joint Plan and incident to the Bankruptcy Cases, are

subject to approval of this Court as reasonable.  To the extent that any such payment is not

subject to the procedures and provisions of Bankruptcy Code Sections 326-330, then such Court

approval shall be deemed to have been given through entry of the Confirmation Order unless,

within 90 days of such payment or request for such payment, the Court, the United States

Trustee, the party making the payment or the party receiving the payment challenges or seeks

approval of the reasonableness of such payment; no other parties or entities shall have standing

to make such a challenge or application for approval.  Nothing in this provision shall affect the

duties, obligations and responsibilities of any entity under Bankruptcy Code Sections 326-330.

       *N.* *Default*

          1.          Events of Default.

The following shall be events of default under the Plan:

               a.        The failure to make a Distribution on account of an Allowed Claim

or Allowed Interest under the Joint Plan; provided, however, that no default shall be deemed to

have occurred if such missed payment is made within thirty (30) days of the date of the missed

payment.

               b.        Provided no agreement exists to extend or modify the terms of any

agreement between the Reorganized Debtor and third party vendors or Creditors, failure of the

Reorganized Debtor to pay any post-confirmation expenses, but not limited to, taxes, salaries, payments to lien holders, or any third person to whom the Reorganized Debtor becomes obligated in the ordinary course of its business.

        c.     The Reorganized Debtor's failure to perform nonmonetary defaults under the Joint Plan; provided, however, that no nonmonetary default shall be deemed to have occurred if such default is cured within forty-five (45) days after written notice of such nonmonetary default has been provided the Reorganized Debtor and its General Reorganization Counsel.  All such notices hereunder shall be made <u>both</u> by facsimile and U.S. Mail, first class postage prepaid.  Notice shall be deemed complete when transmission of the facsimile is completed.

        2.     <u>Cure of Prior Defaults</u>.

As of the Confirmation Date, any defaults by the Debtors under any non-bankruptcy law or agreement, shall be deemed cured, and notice of default or sale recorded by any creditor prior to the Confirmation Date shall be deemed null, void and have no further force or effect.

        *O.*     *<u>Assumption or Rejection of Unexpired Leases and Executory Contracts</u>.*

        1.     <u>Assumptions.</u>

Most of the Debtors' executory contracts and/or unexpired leases have either been assumed and assigned, or rejected by Court order, during the pendency of the Bankruptcy Cases, in connection with sales of various properties.  Notwithstanding that the Joint Plan is a liquidating plan of reorganization, there remain two (2) properties in the Natural Pork bankruptcy estate yet to be sold, the Williamsburg, Indiana and Windthorst, Texas properties.

Since there are executory contracts and/or unexpired leases associated with these properties, namely manure leases, the Debtors intend on assuming all unexpired leases or

executory contracts, so they can be assigned to any potential purchasers of the Williamsburg and Windthorst properties.

      2.      <u>Rejections.</u>

On the Effective Date, all executory contracts and/or unexpired leases not specifically assumed in connection with the Williamsburg and Windthorst properties, will be rejected, as of the Effective Date. The Order Confirming the Joint Plan shall constitute an Order approving the rejection of any such executory contract or unexpired leases. **If you are a party to an executory contract or unexpired lease to be rejected and you object to the rejection of your contract or lease, you must file and serve your objection to the Joint Plan within the deadline for objecting to the confirmation of the Joint Plan**.

THE BAR DATE FOR FILING A PROOF OF CLAIM BASED ON A CLAIM ARISING FROM THE REJECTION OF AN EXECUTORY CONTRACT OF UNEXPIRED LEASE IS NO LATER THAN THIRTY (30) DAYS AFTER THE CONFIRMATION DATE. Any Claim based on the rejection of an executory contract or unexpired lease will be barred if the Proof of Claim is not timely filed, unless the Court later orders otherwise.

      3.      <u>Reservation of Rights</u>.

The Debtors and Reorganized Debtor reserve the right to file applications or motions for the assumption or rejection of any executory contract or unexpired lease at any time prior to the Confirmation Date, and to prosecute any such application to entry of a Final Order any time thereafter.  In the event that the Court enters a Final Order denying rejection of executory contract or unexpired lease, such Final Order shall be deemed to be an assumption by the Debtor of such executory contract or unexpired lease.

      4.      <u>Proof of Claim</u>.

Each entity that is a party to an executory contract or unexpired lease that is either

assumed, assigned or rejected pursuant to this Joint Plan, and only such entity, shall be entitled to

file, not later than thirty (30) days after the Confirmation Date, a Proof of Claim for damages or

cure payment alleged to arise from the assumption, assignment or rejection of the contract or

lease to which such entity is a party.

P.          *Objections to Claims and Interests*.

The Debtors or the Reorganized Debtor shall file any objections to Claims and/or

Interests on or before the Claims Objection Date, unless the Court, upon request, extends such

period.  Such extension may be granted without notice to the affected Claimant or Interest

holder. Objection may include a request for subordination pursuant to Bankruptcy Code Section

510.  Filing, service and prosecution of such Objections shall be subject to and in accordance

with the Bankruptcy Code and Bankruptcy Rules.

Q.          *Resolution of Disputes*.

Disputes regarding the validity or amount of Claims or Interests shall be resolved

pursuant to the procedures established by the Court, the Joint Plan, the Bankruptcy Code, the

Bankruptcy Rules and other applicable law, and such resolution shall not be a condition

precedent to confirmation or consummation of the Plan.

R.          *Settlement*.

The Debtors or the Reorganized Debtor may compromise, liquidate or otherwise settle

any undetermined, contested or objected to Claim or Interest or Cause of Action pursuant to

Bankruptcy Rule 9019.

50

*S.*       *Allowed Amount of Claims and Interests.*

No holder of an Allowed Claim or an Allowed Interest shall receive a Distribution in excess of the amount allowed, either by the Court or as provided herein, with respect to such Allowed Claim or Allowed Interest.

*T.*       *Unclaimed Funds.*

Any Distribution by check to any holder of an Allowed Claim or an Allowed Interest, if unclaimed or uncashed by the payee thereof, within ninety (90) days after issuance and delivery by first class mail, shall be distributed pro-rata to such other Creditors and/or Interest holders entitled to receive a Distribution under this Joint Plan.  All liabilities and obligations of the Reorganized Debtor to such payee and any holders of such check shall thereupon cease.  Any check distributed to a holder of an Allowed Claim or Allowed Interest holder shall bear a legend that the check shall be void if not cashed or presented for payment within 90 days of the date of issuance.

*U.*       *Modification/Amendment of Plan.*

1.       Amendments Prior to Confirmation.

The Debtors may propose any number of amendments to or modifications of the Joint Plan, or may rescind and withdraw the Joint Plan in its entirety (with or without substitution of a replacement plan), at any time prior to confirmation.  If the Debtors revoke or withdraw the Joint Plan or if Confirmation or the Effective Date does not occur, then the Joint Plan shall be deemed null and void, and in any such event, nothing contained herein shall be deemed to constitute an omission or a waiver or release of any Claims or Interests by or against the Debtors or any other person or to prejudice in any manner the rights of the Debtors or any other person in any further proceedings involving the Debtors.

2.      <u>Amendments After Confirmation</u>.

The Joint Plan may be modified by the Debtors or Reorganized Debtor at any time after

the Confirmation Date, provided that such modification meets the requirements of the

Bankruptcy Code and is not inconsistent with the provisions of the Joint Plan.  The Debtors and

the Reorganized Debtor may, with the approval of the Court, and so long as it does not

materially or adversely affect the interests of Creditors or Interest holders, remedy any defect or

omission, or reconcile any inconsistencies in the Joint Plan, or in the Confirmation Order, in such

manner as may be necessary to carry out the purposes and intent of the Joint Plan.

3.      <u>Effect on Claims and Interests</u>.

A Creditor or Interest holder that has previously accepted or rejected this Plan shall be

deemed to have accepted or rejected, as the case may be, this Joint Plan, as modified, unless,

within the time fixed by the Court, such Creditor or Interest holder elects in writing to change

his/her/its previous acceptance or rejection.

V.      <u>*Post-Confirmation Status Reports and Final Decree*</u>.

The Reorganized Debtor shall comply fully with all provisions of the Bankruptcy Code,

Bankruptcy Rules and Guidelines of the Office of the United States Trustee, and in connection

therewith, shall file with the Court a status report within 120 days of the entry of the

Confirmation Order, and every quarter thereafter, describing the Reorganized Debtor's progress

towards consummation of the Joint Plan.  When the Joint Plan is fully administered in all

material respects, the Reorganized Debtor shall file a Final Report and Motion for Entry of Final

Decree closing this bankruptcy case.

W.        *Termination of the Official Committee*

On the Effective Date, the Official Committee shall dissolve and the members of the

Committee shall be released and discharged from all rights and duties arising from or related to

the Bankruptcy Cases.  On the Effective Date, all Claims or Causes of Action, if any, of the

Debtors or Reorganized Debtor against any member of the Official Committee, and any officer,

director, employee, or agent of an Official Committee member shall be compromised, settled,

and released in consideration of the terms of this Joint Plan.

X.        Post-Confirmation Jurisdiction.

The Court shall retain jurisdiction over the Bankruptcy Cases subsequent to the

Confirmation Date to the fullest extent permitted under Section 1334 of Title 28, United States

Code, including, but not limited to, the following:

(a)  To determine any requests for subordination pursuant to the Plan and Bankruptcy

Code Section 510, whether as part of an objection to Claim or otherwise;

(b)  To determine any motion for the sale of the Debtors' property or to compel

reconveyance of a lien against or interest in the Debtors' property upon the payment, in full, of a

Claim secured under the Plan;

(c)  To determine any and all objections to the allowance of Claims, including the

objections to the classification of any Claim and including, on an appropriate motion pursuant to

Bankruptcy Rule 3008, reconsidering Claims that have been allowed or disallowed prior to the

Confirmation Date;

(d)  To determine any and all applications of Professional Persons and any other fees and

expenses authorized to be paid or reimbursed in accordance with the Bankruptcy Code or the

Plan;

(e)  To determine any and all pending applications for the assumption or rejection of executory contracts, or for the rejection or assumption and assignment, as the case may be, of unexpired leases to which the Debtors are a party or with respect to which they may be liable, and to hear and determine, and if need be, to liquidate any and all Claims arising therefrom;

(f)  To hear and determine any and all actions initiated by the Debtors or the Reorganized Debtor to collect, realize upon, reduce to judgment or otherwise liquidate any Causes of Action of the Debtors or the Reorganized Debtor;

(g)  To determine any and all applications, motions, adversary proceedings and contested or litigated matters whether pending before the Court on the Confirmation Date or filed or instituted after the Confirmation Date including, without limitation, proceedings under the Bankruptcy Code or other applicable law seeking to avoid and recover any transfer of an interest of the Debtors and property or obligations incurred by the Debtors, or to exercise any rights pursuant to Bankruptcy Code Sections 544-550;

(h)  To modify the Plan or the Disclosure Statement or remedy any defect or omission or reconcile any inconsistency in the order of the Court including the Confirmation Order, the Plan or the Disclosure Statement in such manner as may be necessary to carry out the purposes and effects of the Plan;

(i)  To determine disputes regarding title of the property claimed to be property of the Debtors whether as Debtors or Debtors in Possession;

(j)  To ensure that the Distributions to holders of Claims are accomplished in accordance with the provisions of the Plan;

(k)  To liquidate or estimate any undetermined Claim or Interest;

(l)  To enter such orders as may be necessary to consummate and effectuate the operative provisions of the Plan, including actions to enjoin enforcement of Claims inconsistent with the terms of the Plan;

(m)  To hear any other matter not inconsistent with Chapter 11 of the Bankruptcy Code;

(n)  To enter a final decree closing the reorganization cases;

(o)  To enter and implement such orders as may be appropriate of the event of the Confirmation Order is for any reason stayed, reversed, revoked or vacated; and

(p)  To determine such other matters as may arise in connection with the Plan, the Disclosure Statement or the Confirmation Order.

If the Court abstains from exercising, or declines to exercise jurisdiction, or is otherwise without jurisdiction over any matter arising out of the Bankruptcy Cases, this post-confirmation jurisdiction section shall have no effect upon and shall not control, prohibit or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

Y.        _Bar Date for Administrative Expense Claims._

All Non-Governmental Administrative Claimants shall file motions for allowance of their Administrative Expense Claims not later than 30 days after the Confirmation Date or such Administrative Expense Claims shall be disallowed and forever barred.

Any Creditor or party in interest having any Claim or Cause of Action against the Debtors, or against any Professional Persons relating to any actions or inactions in regard to the Bankruptcy Cases, must pursue such Claim or Cause of Action by the commencement of an adversary proceeding within 30 days after Confirmation of the Joint Plan, or such Claim or Cause of Action shall be forever barred and released.  Nothing in this Section shall be construed to affect the Bar Date for filing pre-petition Claims against the Debtors.

The Office of the United States Trustee shall not be obligated to file any Proof of Claim

for either pre-confirmation or post-confirmation fees owed by the Debtors for and on account of

the U.S. Trustee Quarterly Fees.

Z.        Retirement Benefits.

The Debtors did not provide any employee benefits to their employees.  Pursuant to

Bankruptcy Code Section 1129(a)(13), after the Effective Date, and pursuant to this Joint Plan,

to the extent applicable or required, the Reorganized Debtors shall provide, and continue to

provide, for the continuation of retiree benefits, as that term is defined under Bankruptcy Code

Section 1114, at the level established per Bankruptcy Code Section 1114, and for the period of

time that the Debtors and the Reorganized Debtors have obligated themselves to provide such

benefits.

AA.        General Provisions.

1.        Headings.

The article and section headings used in this Joint Plan, except for definitions contained

in Article I, are concerted for convenience and reference only and neither constitutes a part of

the Joint Plan nor in any manner affect the terms, provisions or interpretations of the Joint Plan.

2.        Severability.

Should any term or provision in the Joint Plan be determined to be unenforceable, such

determination shall in no way limit the enforceability and operative effect of any other term or

provision of the Joint Plan; provided, however, that this provision shall not be applied or

interpreted so as to defeat the primary purpose of this Joint Plan, to-wit: the restructuring of the

Debtors' obligations to its Creditors on their material terms and according to the treatment afforded to their Claims under the Joint Plan.

       3.      <u>Governing Law</u>.

Except to the extent that the Bankruptcy Code or other provisions of federal law are applicable, the rights and obligations arising under the Joint Plan in any documents, agreements and instruments executed in connection with the Joint Plan (except to the extent such documents, agreements and instruments designate otherwise) shall be governed by, and construed and enforced in accordance with, the laws of the State of Iowa.

       4.      <u>Successors and Assigns</u>.

The rights and obligations of any entity named or referred to in the Joint Plan shall be binding upon, and shall inure to the benefit of, the successors and assigns of such entity.

       5.      <u>Plan is Self Executing</u>.

The terms and provisions of this Joint Plan are self-executing on the Effective Date.

DATED:  April 2, 2014                    Respectfully submitted,

                                         Natural Pork Production II, LLP
                                         An Iowa Limited Liability Partnership

                                         By: _/s/ Lawrence Handlos_____
                                                Lawrence Handlos
                                                Its: Sole Managing Partner


Prepared by:

Jeffrey D. Goetz, Esq., IS# 9999366          Aaron L. Hammer, Esq.
Bradshaw, Fowler, Proctor & Fairgrave, P.C.  Mark S. Melickian, Esq.
801 Grand Avenue, Suite 3700                 Sugar Felsenthal Grais & Hammer LLP
Des Moines, IA 50309-8004                    30 N. LaSalle Street, Ste. 3000
515/246-5817                                 Chicago, IL  60602
515/246-5808 FAX                             312/704-9400
goetz.jeffrey@bradshawlaw.com                312/372-7951  FAX
                                             ahammer@sugarfgh.com
                                             mmelickian@sugarfgh.com


General Reorganization Counsel for Natural   Counsel to the Official Committee of
Pork Production II, LLP., and its wholly-     Unsecured Creditors
owned subsidiaries: Crawfordsville, LLC,
Brayton, LLC, North Harlan, LLC, South
Harlan, LLC, Debtors and Plan Proponents