# UNITED STATES BANKRUPTCY COURT

## SOUTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| In Re: | ) | Case No.: 12-02872-als11 |
| | ) | |
| **NATURAL PORK PRODUCTION II, LLP** | ) | Chapter 11 |
| | ) | |
| | ) | Hon. Anita L. Shodeen |
| Debtor and Debtor in Possession. | ) | |
| | ) | **DEBTOR'S MOTION FOR ORDER** |
| PO Box 468 | ) | **AUTHORIZING SALE OF REAL** |
| Harlan, IA 51537 | ) | **PROPERTY BY AUCTION FREE AND** |
| | ) | **CLEAR OF ALL LIENS, CLAIMS AND** |
| EIN: 203-0480873 | ) | **ENCUMBRANCES** |
| | ) | |
| _____ | ) | No Hearing Set |

Natural Pork Production II, LLP ("NPPII" or "Debtor"), Debtor and Debtor-in-Possession herein, by and through its duly-employed General Reorganization Counsel, Jeffrey D. Goetz, Esq., of the law firm of Bradshaw, Fowler, Proctor & Fairgrave, P.C., respectfully submits its Motion for an Order Authorizing the Sale of the Williamsburg Farm Real Estate by Auction Free and Clear of Liens, Claims and Encumbrances ("Sale Motion"). In support of this Sale Motion, the Debtor states as follows:

1.      Debtor commenced the captioned case by filing a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code ("Bankruptcy Code") on September 11, 2012 (the "Petition Date").

2.      Debtor continues to operate its businesses and manage its property as debtor-in-possession pursuant to Bankruptcy Code Sections 1107(a) and 1108.

3.      No trustee or examiner has been appointed in this case. An Official Unsecured Creditors Committee ("OUCC") has been appointed in the case and is represented by counsel.

4.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. Sections 157

and 1334. Venue in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core

proceeding pursuant to 28 U.S.C. Section 157(b)(2). The statutory predicates for relief sought

herein include Bankruptcy Code Sections 105(a), 363 and 365 and Rules 2002, 6004, 6006 and

9006 of the Federal Rules of Bankruptcy Procedures (the "Bankruptcy Rules").

5.    The Debtor holds title to approximately 84.33 acres of farm land and out

buildings in Greene Township, Wayne County, Indiana, which is more particularly described as a

part of the NE ¼ of Section 19, Township 18 North, Range 14 East, Greene Township, Wayne

County, Indiana ("Williamsburg Farm"). The Debtor desires to sell the Williamsburg Farm for the

highest and best price possible, by public auction.

6.    To that end, on March 12, 2015, the Debtor filed an Application to Employ

Halderman Real Estate Services ("Halderman") (Docket Item 738) to list, market and conduct a

public auction sale of the Williamsburg Farm on behalf of the Debtor. On April 8, 2015 the Court

entered its Docket Text Order (Docket Item 745) granting the Application to Employ Halderman.

7.    The Debtor acquired the Williamsburg Farm in approximately March, 2006, but

never conducted hog production operations at that site. The tillable acreage has been rented out

annually on a cash rent basis in the past, but there is currently no cash rent contract or lease in

place to farm the tillable acreage for the upcoming 2015 growing season. The CAFO/Lagoon

permits with the State of Indiana expired in or about January, 2010.

8.    The Debtor proposes to have Halderman sell the Williamsburg Farm at public

auction on June 9, 2015, beginning at 6:30pm, at the Golay Center in Cambridge City, Indiana.

The Debtor's engagement of Halderman to list, market and sell the Williamsburg Farm at public

auction provides for Halderman to receive a 4.50% commission, with the Debtor responsible for

advertising costs, which will not exceed $5,500.00. A true and exact copy of the proposed Real

Estate Listing Agreement is attached hereto as Exhibit "A" and is incorporated by reference herein.

9.      Debtor believes this Sale Motion, and the public auction contemplated thereby is in the best interests of the bankruptcy estate and in the best interests of all other interested parties in this Chapter 11 case.  An orderly sale of the Williamsburg Farm is essential, time is of the essence, and timing of the proposed auction sale is propitious for the upcoming growing season. The net sale proceeds will also aid in minimizing the administrative expenses of Debtor's estate.

### Marketing Efforts

10.      In order to do the most efficient job possible in marketing the Williamsburg Farm, and attempting to create as robust an auction environment as possible to ensure the Debtor and the Bankruptcy Estate are realizing the maximum value for the Williamsburg Farm, Halderman will aggressively list, market and advertise the Williamsburg Farm and the public auction in the usual and customary manner as for similar farm properties.  The Debtor and Halderman believe there will be sufficient lead time between now and June 9th to adequately conduct such marketing and advertising.  The Debtor and Halderman also believe allocating up to $5,500 for such marketing costs will be sufficient.

### Relief Requested

11.      Bankruptcy Code section 363 governs Debtor's ability to sell property of the estate outside of the ordinary course of business.  Although this section does not set forth a standard for determining when it is appropriate to authorize such a sale, courts have uniformly held that such a sale should be approved when it is justified by a sound business purpose.  *See In re Lionel Corp.*, 722 F.2d 1063, 1070-71 (2d. Cir. 1983); *Chrysler Group LLC v. South Holland Dodge, Inc.*, 862 F. Supp. 2d 661, 668 (E.D. Michigan 2012); *In re Dewey & LeBoeuf LLP*, No.

12–12321 (MG), 2012 WL 5386276, at *5 (Bankr. S.D. N.Y. Nov. 1, 2012); *In re Nicole Energy Services, Inc.*, 385 B.R. 201, 230 (Bankr. S.D. Ohio 2008). The burden of establishing a rational business justification lies with the debtor. *Nicole Energy*, 385 B.R. at 230 (citing *Lionel*, 722 F.2d at 1070-71). However, once the debtor makes such a showing, a presumption will attach that the decision was made on an informed basis, in good faith and in the honest belief that the action was in the best interest of the company. *See*, *e.g.*, *In re Brook Valley VII, Joint Venture*, 496 F.3d 892, 900 (8th Cir. 2007).

12.     Applying Bankruptcy Code Section 363, courts accord Debtors substantial deference in formulating procedures for selling assets. *See*, *e.g.*, *In re Boston Generating, LLC*, 440 B.R. 302, 329-330 (S.D. N.Y. 2010) (noting that the requirements for section 363 sales are reviewed according to the deferential "business judgment" standard); *In re Adelphia Communications Corp.*, No. 02–41729 (REG), 2003 WL 22316543, at *30 (Bankr. S.D.N.Y. Mar. 4, 2003) (applying the "business judgment" standard presumption of validity and noting that courts are "loath to interfere with corporate decisions absent showings of bad faith, self interest, or gross negligence"). Indeed, courts recognize that procedures intended to enhance competitive bidding are consistent with the goal of maximizing the value received by the estate and are appropriate in the context of bankruptcy sales. *See*, *e.g.*, *In re Dura Automotive Sys., Inc.*, No. 06–11202, 2007 WL 7728109, at *90 (Bankr. Del. Aug. 15, 2007) (finding that "procedures intended to enhance competitive bidding are consistent with the goal of maximizing the value received by the estate and therefore are appropriate in the context of bankruptcy sales").

13.     Here, sale of the Williamsburg Farm by Public Auction is supported by ample business justification and is reasonable and appropriate under the circumstances of this case.

The proposed Public Auction is designed to foster an open, competitive and fair sale process, while maximizing the value the estate hopes to obtain for the Williamsburg Farm.  Debtor requests that the Court approve the Sale Motion as fair and reasonable under the circumstances and authorize and direct Debtor to proceed in accordance therewith.

### The Proposed Transaction Satisfies All Applicable Legal Standards

14.     Section 363(b)(1) of the Bankruptcy Code provides, in relevant part, that a Debtor "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."  *See also* Bankruptcy Rule 6004(f)(1) ("All sales not in the ordinary course of business may be by private sale or by public auction").  This section generally permits a Debtor to sell property of the estate outside of the ordinary course of its business where the proposed sale is a sound exercise of the Debtor's business judgment and when such sale is proposed in good faith.  *See In re Lionel Corp.*, 722 F.2d 1063, 1070 (2d Cir. 1983); *In re Nicole Energy Services, Inc.*, 385 B.R. 201, 210 (S.D. Ohio 2008) ("Under the law of this [Sixth] Circuit, the Court may approve a sale of all of a debtor's assets under § 363(b) 'when a sound business purpose dictates such action.'") (quoting *Stephens Industries, Inc. v. McClung*, 789 F.2d 386, 390 (6th Cir. 1986)).

15.     In the instant case, the proposed sale of the Williamsburg Farm constitutes a sound exercise of Debtor's business judgment and has been proposed in good faith.  First, an expeditious sale of the Williamsburg Farm will aid in minimizing the administrative expenses of Debtor's estate, resulting in greater distribution to creditors.  Second, such sale will increase the probability farming will be able to commence at the optimum time for planting soybeans.  Finally, the sale represents the best opportunity for the Debtor to realize the value of the Williamsburg Farm, considering external factors in the marketplace.

16.     Debtor believes this Sale Motion and the proposed Public Auction contemplated therein is in the best interests of the bankruptcy estate and in the best interests of all other interested parties in this Chapter 11 case.

17.     Debtor submits that the factors described above, which support an expeditious sale of the Williamsburg Farm, are consistent with the traditional rationale for authorizing a sale outside of a Chapter 11 Plan. *See also In re Boston Generating, LLC,* 440 B.R. 302, 321 (S.D. N.Y. 2010); *Lionel*, 722 F.2d at 1070.

## Sale Free and Clear of Liens

18.     Bankruptcy Code Section 363(f) authorizes a Debtor to use, sell or lease property of the estate outside of the ordinary course of business, free and clear of any interest in such property.  The Sale Motion contemplates a Public Auction of the Williamsburg Farm free and clear of all interests, liens, claims and encumbrances, including existing or asserted rights of first refusal, contractual restrictions on transferability or other similar protective rights.  Any such interests, liens, claims and encumbrances would attach to the proceeds of the sale of the Williamsburg Farm (the "Sale Proceeds") ultimately attributable to the property against or in which such interest, lien, claim or encumbrances is asserted.

19.     Under Bankruptcy Code Section 363(f)(2), a sale free and clear of all interests, liens, claims and encumbrances is permissible if all parties asserting liens on or other interests in the assets consent.  The Debtor is unaware of any creditors asserting interests, liens, claims or encumbrances against the Williamsburg Farm, other than for property taxes.  The Debtor will provide due, adequate and proper notice of this Sale Motion to the United States Trustee, the OUCC, the ICC, and taxing authorities and all other parties who have filed requests for special notice, thereby giving them the opportunity to object to this Sale Motion.  Assuming there are no

objections filed by secured creditors, section 363(f)(2) will be satisfied. *See, e.g.*, *In re Motors Liquidation Co.*, 430 B.R. 65, 72) (in a Chapter 11 case, noting that "secured lenders" approved a transaction under section 363(b) of the Bankruptcy Code and related transactions).

20.    Under Bankruptcy Code Section 363(f)(4), a sale free and clear of all interests, liens, claims and encumbrances is permissible if the interest of any entity is in *bona fide* dispute. Under Bankruptcy Code Section 363(f)(5), a sale free and clear of all interests, liens, claims and encumbrances is permissible if any party asserting an interest in the assets could be compelled to accept money satisfaction of such interest in a legal or equitable proceeding.  The Debtor submits that to the extent the Inter Creditor Committee ("ICC") asserts security interests in the Williamsburg Farm, and does not consent under section 363(f), a sale free and clear of their interests will still be permissible because, as to the ICC, its interests, if any, or the amount of its interests, if any, are in fact the subject of a *bona fide* dispute, and they could be compelled to accept a money satisfaction of their interests in a legal equitable proceeding.

<u>**Executory Contracts and Unexpired Leases**</u>

21.    The Debtor is unaware of any executory contracts or unexpired leases related to the Williamsburg Farm.

<u>**Reduction or Elimination of 14-Day Stay Under Bankruptcy Rules 6004(h) and 6006(d)**</u>

22.    Time is of the essence to sell the Williamsburg Farm, and any unnecessary delay in concluding the Public Auction could result in the collapse of the sale.  Accordingly, this Court should waive the 14-day period staying any order to sell or assign property of the estate imposed by Bankruptcy Rules 6004(h) and 6006(d).

WHEREFORE**,** the Debtor respectfully requests that the Court approve this Sale Motion and enter an Order authorizing the Debtor to sell the Williamsburg Farm at Public Auction

pursuant to the Exhibit "A" Real Estate Listing Agreement on June 9, 2015, free and clear of all liens, encumbrances, claims and interests, including but not limited to mortgage liens, personal property liens, construction and mechanics' liens, judgment liens, rights of first refusal and all other claims; find that the sale be effective immediately at the conclusion of the Public Auction and that the stay provisions of Bankruptcy Rules 6004(h) and 6006(d) do not apply; and provide such other relief as is just and proper under the circumstances.

Date:  April 23, 2015                           Respectfully submitted,

                                                /s/ Jeffrey D. Goetz
                                                Jeffrey D. Goetz, Esq., IS #9999366
                                                Bradshaw Fowler Proctor & Fairgrave, P.C.
                                                801 Grand Avenue, Suite 3700
                                                Des Moines, IA 50309-8004
                                                515/246-5817
                                                515/246-5808 FAX
                                                goetz.jeffrey@bradshawlaw.com

                                                General Reorganization Counsel
                                                for Natural Pork Production II, LLP
                                                Debtor and Debtor-in-Possession


                            CERTIFICATE OF SERVICE

        This document was served electronically on parties who receive electronic notice through CM/ECF as listed on CM/ECF's notice of electronic filing.  /s/        Barbara Warner

# HALDERMAN
## REAL ESTATE
### SERVICES

# HALDERMAN REAL ESTATE SERVICES INC.
# REAL ESTATE LISTING AGREEMENT



Date: April 20, 2015

## To Halderman Real Estate Services Inc. (or HRES):

In consideration of your services in offering the following property for sale, I hereby give you the exclusive right from  April 20, 2015  to  October 20, 2015  to find a purchaser for the following described property.: approximately 84.33 acres, commonly referred to as the Natural Pork Production II LLP Williamsburg farm, located in Greene Township, Wayne County, State of Indiana, which is more particularly described as follows: a part of the NE ¼ of Section 19, Township 18 North, Range 14 East, Greene Township, Wayne County, Indiana. The property is generally located on the west side of Centerville Road, approximately ¼ mile south of the Randolph County Line Road, approximately 2.25 miles north of Williamsburg, IN.

The terms of the sale shall be as mutually agreed upon between the buyer and seller or as follows: at a price and terms acceptable to the Seller.

If a purchaser is obtained for said property by you or anyone for me, including myself, during the period of this exclusive listing agreement, at the price and terms above stated or upon any other price, terms or exchange to which I consent; or if said property is sold by or for me within one year after the expiration of this listing to any person with whom you have had negotiation and whose name has been furnished to me in writing during the period of this listing by you, I hereby agree to pay you a commission of 4.50% of the price at which said property is sold.

In the event Purchasers breach an accepted "Purchase Agreement for Real Estate" and fail or refuse to close, and the Purchaser's earnest money deposit is forfeited, said earnest money deposit will be disbursed to Seller and Broker on a fifty-fifty (50/50) basis with the Broker's 50% portion not to exceed the amount the real estate commission would have been if the sale had closed.

Selling this property is of prime importance and to do so we recognize that you will do extensive marketing.  This may result in brokers becoming involved who are not members of your organization, and these outside brokers will want to co-broker if they furnish a purchaser who buys my property.  If you need to co-broker with outside brokers, I hereby agree to pay you a commission of  -   of the price at which said property is sold and you will divide the commission between your firm and the co-brokering broker on whatever terms you and the co-broker agree.

Exceptions: None.

I acknowledge that you have advised me that subject property may be sold with the assistance of a cooperating broker, operating in any of the following capacities, and that your policy is to cooperate with such brokers as indicated by me and your initials in the appropriate blank(s):

| CCP | |
|---|---|
| * | **You  (shall)  (shall not)  [strike one]  cooperate with and compensate Buyer-Brokers compensated by you** |
| CCP * | Buyer-Brokers, compensated by you, are licensees who represent the interest of buyers, even if compensated by you, as a portion of your commission. Compensation alone may not create an agency relationship. Said cooperating broker will be paid in accordance with the agreement made between you and the Buyer-Broker's broker. |
| CCP * | **You  (shall)  (shall not)  [strike one]  cooperate with Buyer-Brokers compensated by buyers or me directly** |
| CCP * | Buyer-Brokers compensated by buyers or me, are licensees who represent the interests of the buyer and are compensated by the buyer or me directly, instead of by you. In cooperating with this type of Buyer-Broker you will permit said buyer-broker to show and sell the property, but will not compensate said buyer-broker as a portion of your commission. |

Having been informed that some potential buyers may employ the services of their own agent/broker (also known as Buyer Broker/Agent), authority is granted to show property and make it available to Buyer Brokers/Agents; if such is within your company's policy.  In the event such a Buyer Broker/Agent procures a buyer, you are authorized to pay a portion of the commission to the Buyer Broker/Agent.

I acknowledge that from time to time you or other real estate licensees represent both the buyer and the seller (LIMITED AGENCY) in a transaction, but only after a disclosure is made and an informed consent is granted.  If the consent from me is verbal, it shall be confirmed in writing at the time the purchase agreement is submitted.  When acting as a dual agent, there is a limitation on your or other real estate licensees' ability to represent either party fully and exclusively. For example, information obtained within the confidentiality and trust of the fiduciary relationship with one party must not be disclosed to the other party.

I agree to make arrangements so that you may show the property to prospective purchasers, including the interior of the dwelling(s) during reasonable hours.  You are hereby given permission to erect a "For Sale" sign on said property.

Upon receipt of a deposit and signed agreement by purchaser to purchase said property upon the price and terms herein outlined, I agree to execute such agreement, and as soon as possible thereafter furnish a complete abstract of title or obtain the issuance of an owner's policy of title insurance, and convey a marketable title to said property.  Possession of the property to be given when sale is consummated or at any time mutually agreed upon between the buyer and seller.  Exceptions: _____

Auction Information:    Date:  Early June,, 2015               Time:  6:30 p.m.          Location of the Auction: Either the Williamsburg Community Center or

Open House Dates and Times:  One Open House Approx 2 wks Prior to Auction.          Golay Center, or Similar Controlled Environment Facility with Good Parking

Advertising Information: If the property is offered at public auction the seller will pay all the advertising expenses. **Property is being offered at Public Auction so Seller Shall Pay Advertising Costs Not to Exceed $5,500.**  Other terms:

As Seller I hereby certify that all defects or environmental problems that exist on this property and of which I am aware are listed below and/or on the back side of this listing agreement. Currently analyzing status of laggoons on and Indiana Department of Environmental Management concerns._____

It is further agreed as follows: Seller authorizes the Farm Service Agency to provide to Halderman Real Estate Services, Chris Peacock any and all farm program information specific to the above described property owned by the Natural Pork Production II LLP Williamsburg farm.

Halderman Real Estate Services, Inc. and it's employees will not discriminate in any form on the basis of race, color, religion, national origin, sex, marital status, familial status, mental or physical handicap.

Executed in duplicate and I hereby acknowledge receipt of a copy hereof.  If more than one join in the execution hereof as owner, the relative words used herein shall be read as if written in plural.  This contract is binding also upon the Sellers' heirs, administrators, executors, or assigns.

\* _____          _____
                              **Seller**                                                                    **Seller**

Social Security #: _____          Social Security #: _____

Accepted by:
## Halderman Real Estate Services, Inc.

_____

By:   Christopher C. Peacock, Area Representative

Date signed: April 20, 2015                              Date expires:  October 20, 2015